**AMERICAN ALLIANCE INSURANCE CO., LTD., Plaintiff–Appellee,**

v.

**EAGLE INSURANCE COMPANY, Defendant–Appellant.**

No. 1251, Docket 95–7322.

United States Court of Appeals, Second Circuit.

Argued March 26, 1996.

Decided Aug. 7, 1996.

---

**58**

Evan H. Krinick, Uniondale, N.Y. (Christine M. Metzner, Rivkin, Radler & Kremer, Uniondale, N.Y., on the brief), for defendant-appellant.

Robert Goodman, Tell, Cheser & Breitbart, New York City, for plaintiff-appellee.

Before: NEWMAN, Chief Judge,
PARKER, Circuit Judge, and
NICKERSON,* District Judge.

JON O. NEWMAN, Chief Judge:

 This appeal requires the Court to clarify the definition of "excusable neglect," as used in Rule 60(b) of the Federal Rules of Civil Procedure, for purposes of a motion to vacate a default judgment. Eagle Insurance Co. ("Eagle") appeals from the August 18, 1994, judgment of the District Court for the Southern District of New York (Robert W.

Sweet, Judge) ordering Eagle to pay $424,997 to American Alliance Insurance Co., Ltd. ("American"). We conclude that "excusable neglect" is to be construed generously in the context of an attempt to vacate a default judgment and that Eagle satisfied that criterion. We therefore reverse and remand.

### Facts

On February 14, 1991, a fire damaged a commercial garage in New York City. The building was owned by Michael Feidelson, who was insured by American. Shimoe Brake & Wheel, Inc. ("Shimoe"), which leased the garage space in the building, was insured by Eagle. Coverage under the Eagle policy was to run from September 7, 1990, to September 7, 1991. However, Shimoe paid only $900 toward a premium of at least $2,341. Eagle claims that, on January 14, 1991, DCW Auto Agency, Inc., the managing agent for Eagle's commercial garage liability policies, mailed a notice of cancellation to Shimoe, Feidelson, and ASE Corp., Shimoe's broker. Evidence of actual mailing is in dispute.

American paid $322,264 to Feidelson pursuant to its policy. In September 1992, American, as subrogee of Feidelson, brought an action against Shimoe in New York state court. Eagle was notified of this action and declined to defend Shimoe on the ground that it had cancelled its policy with Shimoe. Shimoe never answered the complaint, and a default judgment was entered against it on February 24, 1994.

On May 27, 1994, American commenced the instant lawsuit in the District Court, seeking to collect from Eagle the state court default judgment entered against Shimoe. American served the summons and complaint on the New York State Department of Insurance, which on June 1, 1994, mailed the summons and complaint to Eagle's main office in Lynbrook, New York. The summons and complaint were then forwarded to Eagle's Uniondale office.

---

* Honorable Eugene H. Nickerson, of the United States District Court for the Eastern District of New York, sitting by designation.

Customarily, a pleading clerk for Eagle's in-house counsel, Isserlis & Kurtz, would log pleadings when received in the Uniondale office, obtain an extension of time to answer, and assign the action to an attorney. In this case, however, the summons and complaint were accidentally removed from the pleading clerk's desk and placed in the file of a related case before they had been logged.

On June 8, 1994, American sent to Eagle at its Lynbrook office a copy of a letter to the District Court, requesting that the action be reassigned from White Plains, where it was originally but mistakenly filed, to Foley Square. On July 6, 1994, a notice of reassignment of the case to Judge Sweet was served by mail on Eagle at its Lynbrook address. Eagle acknowledges that it received the July 6 notice, but asserts that its attorneys were not alerted to the action because the managing attorney, upon determining that no response to the notice was required, merely forwarded it to the file as she customarily did with the hundreds of letters she received daily.

A pretrial conference was held on July 13, 1994. There is no evidence that Eagle was informed of this conference. Though no default had been entered, as contemplated by Fed.R.Civ.P. 55(a), the docket entries reflect that the pretrial conference authorized the plaintiff to file a motion for a default judgment. That motion was promptly made, and a default judgment was entered on August 18, 1994. Eagle did not become aware of this lawsuit until September 6, 1994, when it received a restraining notice freezing its bank account. On September 27, 1994, Eagle moved, by an order to show cause, to vacate the default judgment and for leave to serve an answer.

The District Court denied the motion on the ground that Eagle had failed to show excusable neglect. While accepting Eagle's explanation that the summons and complaint had mistakenly been placed in the wrong file, the Court found that Eagle had not presented evidence of adequate procedural safeguards that would ordinarily prevent such an error. In addition, the Court found that Eagle had failed to present a meritorious defense to the suit because Eagle had not

established that the notice of cancellation had been mailed to all insureds and to their brokers, as required by New York insurance law.

### Discussion

■ Preliminarily we note that the entry of a default judgment in this case is procedurally flawed by lack of compliance with the requirement of Rule 55(a) that the clerk enter a default, a step that affords the defaulted party an opportunity to move, pursuant to Rule 55(c), to vacate the default, at least in those instances where the defaulted party becomes aware that a default has been entered. A motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment. *See Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981). Nevertheless, we will review the District Court's denial of the motion to vacate the default judgment under the standards applicable to a Rule 60(b) motion, rather than a Rule 55(c) motion, recognizing, however, that Eagle's motion is made in the default judgment context.

■ Fed.R.Civ.P. 60(b) provides:

**(b) Mistakes; Inadvertence, Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . .

In the default judgment context, courts generally examine three criteria to determine whether to vacate a judgment: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983).

### A. "Willfulness"

With regard to the first criterion, this Court has never stated whether "willfulness" requires a showing of deliberate default or bad faith on the part of the defaulting party, or whether mere carelessness or negligence

will be deemed sufficient to deny vacatur of a default judgment.

1. *Variance among circuits.* Other circuits are divided as to the meaning of "willful" conduct in the context of default judgments. The Third Circuit has held that a Rule 60(b)(1) motion to vacate will be denied only on a showing of "culpable conduct," defined as "actions taken willfully or in bad faith." *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 123–24 (3d Cir.1983). The Third Circuit requires more than the "gross—*almost* willful—neglect" occurring in the well-named *Gross* case, which resulted from the complete breakdown in communication between the two law firms representing one party in the action. The Sixth Circuit has expressly followed the Third in requiring some showing of "culpable conduct." *United Coin Meter Co., Inc. v. Seaboard Coastline Railroad*, 705 F.2d 839, 844–45 (6th Cir. 1983). Although declining to define that phrase precisely, *see Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 195 (6th Cir.1986), the Sixth Circuit has stated that "[t]o be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.* at 194.

Several other circuits, in contrast, expressly refuse to vacate default judgments occurring as a result of attorney carelessness. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1117 (7th Cir.1994) ("The touchstone of our analysis has been 'excusable neglect,' meaning that we will grant relief only 'where the actions leading to the default were not willful, careless, or negligent.'"); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir.1992) (focus on "neglect or culpable conduct ... more consistent with rule 60(b)" than focus on "willful[ness]"); *Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 490 (5th Cir.1976) (per curiam) (failure of insurance company to communicate with defendant

three weeks after receiving copy of complaint suggests "absence of minimal internal procedural safeguards" and is not excusable neglect); *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975) (delay due to numerous forwardings not excusable neglect), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Gibbs v. Air Canada*, 810 F.2d 1529, 1537–38 (11th Cir.1987) (misplacement of complaint by mail clerk not excusable neglect). The Tenth Circuit has also stated that "[c]arelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)," albeit in a case in which the party failed to provide any explanation for its previous lawyer's failure to answer the motion to dismiss. *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir.1990).

2. *Second Circuit precedent.* Though we have elaborated little on the "willfulness" standard identified in *Davis*, this Court has recently implied that it will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error. In *Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1078 (2d Cir.1995), we concluded that the defendant had not willfully defaulted where he had failed to file an answer because he was mistaken as to the appropriate timing for filing the answer and because he had received the incorrect docket number from the clerk's office. We contrasted this situation to one in which we had found willfulness where the defendant " 'admit[ted] he deliberately chose not to appear in the action because he faced possible indictment upon return to New York.' " *Id.*

Though American and the District Court relied on many prior decisions of this Court, none denied motions to vacate because of mere administrative or clerical error.[1] However, we have refused to vacate a judgment where the moving party had apparently made a strategic decision to default. *See United States v. Erdoss*, 440 F.2d 1221 (2d Cir.), *cert. denied*, 404 U.S. 849, 92 S.Ct. 83,

---

[1] District courts in this Circuit, however, have held that attorney or client carelessness does not constitute excusable neglect. *See Insurance Co. of North America v. S/S "Hellenic Challenger"*, 88 F.R.D. 545 (S.D.N.Y.1980) (client adjuster lost summons and complaint); *Aberson v. Glassman*, 70 F.R.D. 683 (S.D.N.Y.1976) (attorney never informed client of deposition date); *Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139 (S.D.N.Y. 1970) (summons and complaint forwarded six times before reaching attorney).

30 L.Ed.2d 88 (1971); *Dal International Trading Co. v. Sword Line, Inc.,* 286 F.2d 523 (2d Cir.1961); *Benton v. Vinson, Elkins, Weems & Searls,* 255 F.2d 299 (2d Cir.), *cert. denied,* 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958). And we found inexcusable an attorney's decision to wait until the eve of trial to inform the Court that he would be unavailable to try the case the next day. *See Schwarz v. United States,* 384 F.2d 833, 835–36 (2d Cir.1967). However, counsel who so "ignored his responsibility" to the Court, *id.* at 836, could readily be found culpable under the more stringent, bad faith construction of the willfulness standard.

■ 3. *The "willfulness" standard in the default judgment context.* We see no reason to expand this Court's willfulness standard to include careless or negligent errors in the default judgment context. As the Fifth Circuit noted, "the basic purpose of default judgment is to protect parties from undue delay-harassment," *Baez,* 518 F.2d at 350. Strong public policy favors resolving disputes on the merits. Although courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct. Rule 60(b) expressly contemplates that some types of "neglect" are "excusable." The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not.[2] At the same time, we recognize that the degree of negligence in precipitating a default is a relevant factor to be considered, along with the availability of a meritorious defense and the existence of prejudice, in determining whether a default judgment should be vacated and whether failure to do so exceeds allowable discretion. *See Wagstaff–EL v. Carlton Press Co.,* 913 F.2d 56 (2d Cir.1990) (default judgment properly vacated upon weighing of all relevant factors). Gross negligence can weigh against the par-

ty seeking relief from a default judgment, though it does not necessarily preclude relief.

■ In this case, the parties agree that Eagle's failure to answer the complaint was due to a filing mistake by its in-house counsel's clerk. Though the two notices that were mailed should have alerted Eagle to the lawsuit, these notices were routinely filed by an office manager who assumed that the case had been assigned and was being diligently handled by a staff attorney. The misfiling went unnoticed for two months. Such conduct, though grossly negligent, as the District Judge found, was not willful, deliberate, or evidence of bad faith, though it weighs somewhat against granting relief.

**B. "Meritorious Defense"**

■ To satisfy the criterion of a "meritorious defense," the defense need not be ultimately persuasive at this stage. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir.1988).

■ Eagle has presented a meritorious defense—the claim that it does not insure Shimoe because the policy was cancelled due to nonpayment of premium before the fire occurred. The District Court, however, required conclusive evidence that the cancellation was mailed to all parties necessary to effectuate the cancellation. However, the District Court was not the trier of fact on this issue and should not have required such evidence in order to permit Eagle to present its defense.

**C. "Prejudice"**

The District Court did not consider the question of whether American would suffer

---

2. We recognize that this construction of "excusable neglect" is more lenient than our interpretation of that phrase for purposes of granting an extension of time to file a notice of appeal under Fed. R.App. P. 4(a)(5). *See, e.g., Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994) (attorney's good faith misunderstanding of operation of rules not excusable neglect); *Bortugno v. Metro–North Commuter Railroad,* 905 F.2d 674, 676 (2d Cir.1990) (failure to file timely notice of appeal not excusable although clerk of court failed to mail notice of judgment). A less rigorous construction is appropriate for a lawsuit yet to be contested on its merits.

any prejudice from having to prosecute its claim against Eagle after a lengthy delay. American, however, does not attempt to uphold denial of the motion to vacate on the ground of prejudice.

### Conclusion

■ Although the denial of a motion for relief from a default judgment is reviewed only for abuse of discretion, "we may reverse its exercise even where the abuse of discretion is not glaring." *Brien,* 71 F.3d at 1077. This limitation reflects the strong preference for resolving disputes on the merits. *Id.* In this case, there is an absence of willfulness, though the gross negligence weighs somewhat against the defaulted party; on the other hand, the presentation of a meritorious defense and the lack of prejudice to American weigh heavily in favor of Eagle. On balance, we conclude that the District Court's allowable discretion was exceeded. The decision of the District Court to deny the motion to vacate is reversed, and the case is remanded for further proceedings.