In re Eglenna F. CASSELL, Debtor.

Bankruptcy No. 7–92–00172.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 27, 1997.

Gordon H. Shapiro, Stephen B. Hebblethwaite, Roanoke, VA, for Debtor.

Jonna McGraw, Carter, Brown & Osborne, Roanoke, for Shawsville Farm Supply, Inc.

Evelyn K. Krippendorf, Roanoke, VA, Trustee.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The matter before the Court on remand from the District Court is whether, pursuant to 11 U.S.C. § 502(j) and Federal Rule of Bankruptcy Procedure 3008, "cause" exists to reconsider the disallowance of a claim filed by Shawsville Farm Supply, Inc. (hereinafter "Shawsville"). Applying the "excusable neglect" standard of Fed.R.Civ.P. 60(b), this Court granted Shawsville's motion to reconsider on November 16, 1995. The Debtor appealed, and the United States District Court reversed this Court's decision and remanded the matter for a determination of whether "cause" for reconsideration exists. An evidentiary hearing was held on August 13, 1996, and the parties have provided written authority in support of their positions. The Court has considered the record and the briefs, and the case is ripe for decision.

## Facts

The facts of this case are set out at length in the Court's November 15, 1995 decision and in Judge Kiser's memorandum opinion. However, additional evidence was offered at the August 13, 1996, hearing that is relevant to the "cause" determination. First, the Trustee objected to Shawsville's May 19, 1992 proof of claim in the amount of $87,-282.13 on the grounds of insufficient documentation. The Trustee no longer takes exception to this claim. Second, as of July 31, 1996, the Trustee had $124,951.52 on hand plus an additional $445,000.00 in the estate to apply toward payment of claims. Shawsville filed an amended proof of claim in the amount of $73,936.50, and all the allowed unsecured claims, including Shawsville's, total $123,954.48. Consequently, the Trustee testified, there are sufficient assets in the estate to pay Shawsville and the other unsecured claimants in full.

Third, the Trustee noted that if Shawsville's claim is disallowed, the Debtor may cease remitting her Metropolitan Life Insurance annuity payments to the Trustee, and the Debtor will receive a refund from the estate. On the other hand, William R. Long, the President of Shawsville, stated that disallowance would mean the loss of $73,936.50, a substantial amount of money to his company.

Fourth, Mr. Long testified that Shawsville has received its mail at P.O. Box 305, Elliston, Virginia 24087 since 1990. This is the address to which the Trustee's objection to claims and the order disallowing claims were sent; yet, Long asserts that they were not received. He also explained the company's procedures for processing mail: When correspondence is sent to P.O. Box 305, it is retrieved from the post office by an employee and is placed on Mr. Long's desk. On a daily basis, both Long and his brother, also a partner in the business, review the mail. If either is on vacation, the partner who is present inspects the mail and places it in a folder for the absent partner to examine upon his return. Shawsville has had no problems with mail being lost, stolen, or misplaced.

Finally, Shawsville filed its original proof of claim on May 19, 1992 and had no further contact with the Trustee until November of 1994 when Shawsville's counsel called regarding the status of the case.[1] During this conversation, the Trustee told counsel about the claim's disallowance but noted that there were more than enough assets in the estate to satisfy all the unsecured claims in full, including Shawsville's. Thereafter, Shawsville's attorney told Mr. Long that she was attempting to arrange a settlement with the Trustee so that Shawsville's claim could be paid. According to Mr. Long, this conversation was the first he learned of the claim's disallowance. In February of 1995, Shawsville filed an amended proof of claim without objection from the Trustee. The Debtor, however, objected in May of 1995 on the grounds of timeliness, and Shawsville responded with its motion for reconsideration one month later.

## Positions of the Parties

Shawsville asserts that the Court has substantial discretion in determining whether cause for reconsideration exists under § 502(j) and that several facts support a finding of cause, *to wit*, (1) the Trustee failed to give adequate notice of the hearing on her objection to Shawsville's claim; (2) Shawsville sufficiently rebutted the presumption of receipt of notice; (3) the Debtor will not be prejudiced if the motion to reconsider is granted; (4) there will be little impact on the administration of the case resulting from granting the motion; (5) Shawsville acted in good faith; and (6) Shawsville will be prejudiced if the motion is not granted.

The Debtor, however, takes issue with Shawsville's assertions. She avers that Shawsville has failed to rebut the presumption that it received notice of the Trustee's objection to claims and order disallowing claims. Moreover, the Debtor argues, Shawsville has provided no explanation for

---

1. Mr. Long had called Shawsville's counsel shortly before and inquired about the progress of the bankruptcy. Mr. Long testified that, having been involved with other cases in the past, he was aware of the protracted nature of bankruptcy estate administration. Therefore, he had not been overly concerned with the delay in receiving a distribution.

its delay in filing the motion for reconsideration. Accordingly, the Debtor contends that cause has not been established.

### Discussion

■ The reconsideration of disallowed claims is governed by 11 U.S.C. § 502(j) and Federal Rule of Bankruptcy Procedure 3008. Section 502(j) states, in relevant part, that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."[2] A determination of the presence or absence of cause is within the "sound discretion" of the court. *Matter of Fox*, 64 B.R. 148, 152 (Bankr.N.D.Ohio 1986); 1983 Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3008.

■ Congress has given little guidance on the prerequisites to a finding of cause;[3] accordingly, many courts faced with a motion for reconsideration have turned to the "excusable neglect" standard of Fed.R.Civ.P. 60(b) for instruction.[4] One of the seminal cases advocating this approach is *In Re Resources Reclamation Corp. of America*, 34 B.R. 771 (9th Cir. BAP 1983). There, the Bankruptcy Appellate Panel found that the following factors—deemed relevant in a Fed. R.Civ.P. 60(b) analysis—are also helpful in determining the existence of cause for reconsideration:

(1) whether granting the delay will prejudice the debtor or other creditors; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; (5) whether clients should be penalized for their counsel's mistake or neglect; and (6) whether the claimant has a meritorious claim.

*Resource Reclamation*, 34 B.R. at 773–74.

The "cause" standard of § 502(j) is not identical to the more stringent "excusable neglect" standard of Fed.R.Civ.P. 60(b). *Thompson v. E.I. DuPont De Nemours & Co.*, 76 F.3d 530, 532–34 (4th Cir.1996). Nevertheless, the factors considered in an excusable neglect analysis "are likely applicable to a cause analysis." *Cassell v. Shawsville Farm Supply, Inc.*, No. 96–0002–R, slip op. at 5, 1996 WL 885793 (W.D.Va. May 16, 1996). Therefore, this Court will look to the considerations elucidated in *Resources Reclamation* for guidance in determining whether the "equities of the case" warrant a finding of cause. Also important is whether a distribution has occurred. 9 *Collier on Bankruptcy*, ¶ 3008.01[3], 3008–5 (15th ed. rev. 1996). Finally, the District Court has earmarked certain factors as being especially relevant to an analysis under § 502(j), *to wit*, (1) possible prejudice to the Debtor; (2) Shawsville's explanation for its delay in contesting the Trustee's objection to claim, and (3) possible prejudice to Shawsville absent reconsideration.

■ Turning first to the issue of delay, Shawsville's original claim was disallowed in July of 1993, but its motion for reconsideration was not filed until June of 1995. Although there is no time limit for seeking reconsideration of an uncontested order disallowing a claim, 9 *Collier on Bankruptcy*, ¶ 3008.01[3], 3008–4 (15th ed. rev. 1996), the passage of such a significant amount of time does work against Shawsville. *Id.* at 3008–5 (noting that unwarranted delay in seeking reconsideration of a claim may result in a

---

**2.** Rule 3008 directs that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order."

**3.** *See* 4 *Collier on Bankruptcy*, ¶ 502.11[5], 502–88 (15th ed. rev. 1996) ("What constitutes 'cause according to the equities of the case' is not entirely clear."); *cf.* 9 *Collier on Bankruptcy*, ¶ 3008.01[4], 3008–5 (15th ed. rev. 1996) ("There is insufficient case law extant to define with precision what test must be met for reconsideration of a claim.").

**4.** One commentator observed that the "vast majority" of cases under § 502(j) look to Fed. R.Civ.P. 60(b) and to the factors laid out in *In Re Resources Reclamation Corp. of America*, 34 B.R. 771 (9th Cir. BAP 1983). Menachem O. Zelamanovitz & Elana C. Jacobson, *The Reconsideration of Contingent and Disputed Claims Under Bankruptcy Code Section 502(j)*, 23 Seton Hall L.Rev. 1612, 1634 (1993).

denial of the motion). Shawsville asserts that the delay was not unwarranted and that it was due, in large part, to a lack of notice—i.e., it contends that it did not receive a copy of the Trustee's objection to claim or order disallowing claims.

■ The law presumes that a properly mailed item was received by the addressee. *In Re Dodd,* 82 B.R. 924, 928 (N.D.Ill.1987) (citing *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418–19, 76 L.Ed. 861 (1932)). This presumption, however, is not conclusive—it can be rebutted "by introducing evidence which would support a finding of the non-existence of the presumed fact." *Id.* at 928–29. Mere denial of receipt is not sufficient. *In Re Cruey,* 158 B.R. 66, 69 (Bankr.W.D.Va.1993). *But see In Re Yoder,* 758 F.2d 1114, 1118 (6th Cir.1985) ("Testimony of non-receipt, standing alone, [is] ... sufficient to rebut the presumption of receipt."). However, the *Dodd* court held that direct testimony of non-receipt coupled with evidence of standardized procedures in receiving and processing claims can rebut the presumption accorded a proper mailing.[5] 82 B.R. at 929. Other courts have cited this proposition with approval. *See In Re Winders,* 201 B.R. 288, 291 (D.Kan.1996); *In Re Hobbs,* 141 B.R. 466, 468 (Bankr.N.D.Ga. 1992); *In Re Walker,* 125 B.R. 177 (Bankr. E.D.Mich.1990). *But see In Re Williams,* 185 B.R. 598, 600 (9th Cir. BAP 1995) (holding *Dodd* to be contrary to the law of the 9th Circuit).

■ The President of Shawsville gave specific testimony concerning the company's standardized procedures for receiving and processing mail. Furthermore, he testified that if the Trustee's objection to claim and order denying claims had been sent to the company, it would have "come across his desk," and he would have called his attorney. Based upon Mr. Long's forthright testimony, this Court holds that the presumption of receipt has been rebutted and that, weighing Mr. Long's testimony against the certificates of mailing, Shawsville received neither the Trustee's objection to claim nor the order disallowing claims.

This lack of notice only partially explains Shawsville's delay in seeking reconsideration. Shawsville learned that its claim had been disallowed in November of 1994 but did not file its motion for reconsideration until June 12, 1995. However, the evidence shows that upon learning of the disallowance, Shawsville's counsel began negotiating with the Trustee for full payment of the company's claim. This resulted in the filing of an amended proof of claim in February of 1994, a claim for which the Trustee had no objection. It was not until May, some three months later, that an objection was filed by the Debtor, and Shawsville responded with a motion for reconsideration at the hearing on the Debtor's objection.

Although a significant amount of time elapsed between the time Shawsville received notice of disallowance and the filing of its motion for reconsideration, Shawsville's course of conduct was reasonable. During this period, Shawsville was making a bona fide effort to negotiate with the Trustee in the hopes that a motion for reconsideration would not be required. Only when it became obvious that the Debtor did not consent to Shawsville's amended claim did the necessity of such a motion become apparent. This Court finds that Shawsville acted in good faith and that its delay was justifiable.

Next, Shawsville's claim represents a large portion of the unsecured debt and its allow-

---

**5.** In that case, Merrill Lynch claimed that it did not receive notice of the Debtor's bankruptcy petition and sought leave to file a late claim. The manager of the company's Chicago accounting department testified that bankruptcy notices are first channeled through a 15 person staff responsible for opening the mail. Following receipt, the department contacts Merrill Lynch's local office for advice and information on the debtor's account. A copy of the notice is then mailed to Merrill Lynch's legal department in New York which decides upon a course of action.

The manager further stated that a search of the company's files revealed no evidence that a notice had been received. *Dodd,* 82 B.R. at 927. The District Court found that this testimony, in concert with an affidavit of non-receipt by the addressee of the notice, sufficiently rebutted the presumption accorded a properly mailed item. *Id.* at 929. Then, weighing this evidence against the clerk's certificate of mailing and the lack of a returned envelope in the court file, the Court held that Merrill Lynch did not receive notice of the debtor's bankruptcy. *Id.*

ance could have a significant impact on other unsecured creditors. The Trustee noted, however, that there are sufficient assets in the estate to pay all unsecured creditors in full, including Shawsville, and that allowing Shawsville's claim would have no impact on those creditors. Accordingly, any prejudice to the unsecured creditors is minimal at best.[6]

The Debtor, on the other hand, may suffer prejudice if Shawsville's claim is allowed. She will be required to continue remitting Metropolitan Life Insurance annuity payments to the estate. In addition, estate funds will only be returned to Ms. Cassell if the claim is disallowed. This prejudice is also minimal, though, when it is considered that Ms. Cassell's indebtedness to Shawsville has never been questioned and that the disallowance of Shawsville's claim would result in a windfall gain to the Debtor.

Finally, prejudice to Shawsville is relevant; although, denying Shawsville's motion would not prejudice the company if it has no likelihood of prevailing on the merits of its claim. *Cassell v. Shawsville Farm Supply, Inc.*, No. 96–0002–R, slip op. at 6, 1996 WL 885793 (W.D.Va. May 16, 1996) (citing *In Re Mathiason*, 16 F.3d 234, 239 (8th Cir.1994)). As noted above, the Debtor's obligation to Shawsville under a promissory note has never been contested. Furthermore, the only objection to Shawsville's original proof of claim was brought by the Trustee on the grounds of insufficient documentation. The Trustee no longer objects to this claim. Moreover, Mr. Long testified that $73,936.50 represents a substantial sum of money to Shawsville. As Shawsville has a high likelihood of success on the merits, the prejudice to the company absent reconsideration would be significant.

### Conclusion

Although there is no well-established formula for ruling on a motion for reconsideration, the above factors provide a sufficient framework for determining the existence of cause under § 502(j). Having weighed those considerations, therefore, this Court finds that the equities of the case, on the whole, support a finding of cause for reconsideration. Such a ruling is consistent with the Bankruptcy Code's goal of providing a statutory mechanism for the liquidation of assets and distribution of dividends. Accordingly, it is

### ORDERED:

That the motion for reconsideration of Shawsville Farm Supply, Inc. be, and it hereby is, GRANTED. This Court's order dated July 14, 1993, disallowing the proof of claim of Shawsville is VACATED, and the amended claim is deemed filed under 11 U.S.C. § 501(a).

---

6. Shawsville's actions have delayed the administration of the Debtor's estate; nevertheless, where dividends have not been paid, as is the case here, "there is no prejudice to other creditors in allowing reconsideration...." *In Re Washington County Broadcasting, Inc.*, 39 B.R. 77, 79 (Bankr.D.Me.1984).