**In re JWP INFORMATION SERVICES, INC., Debtor.**

**Bankruptcy No. 94 B 41765 (JHG).**

United States Bankruptcy Court,
S.D. New York.

March 12, 1999.

LeBoeuf, Lamb, Greene & MacRae L.L.P., by Perter A. Ivanick, and Allison H. Weiss, New York City, for to Western & Southern Life Insurance Co.

Jeffrey L. Sapir, White Plains, NY, for Chapter 7 trustee.

### DECISION ON MOTION TO RECONSIDER ORDER EXPUNGING CLAIM

JEFFRY H. GALLET, Bankruptcy Judge.

This motion tests the outer limit of the excusable neglect doctrine. Western & Southern Life Insurance Co. ("Western") moves pursuant to § 502(j) of the United States Bankruptcy Code (the "Code") and Fed.R.Bankr.P. 3008 for reconsideration of my order expunging its claim (the "Order").[1] Jeffrey Sapir, the Chapter 7 Trustee (the "Trustee"), objects. For the reasons set forth below, Western's motion is denied.

## BACKGROUND

In September 1987, Western, as landlord, entered into a lease agreement (the "Lease") with JWP Information Services, Inc. ("JWP" or the "Debtor"), as tenant, for space in the Atlas Bank Building in Cincinnati, Ohio. In April 1993, Western and JWP apparently entered into a Lease Termination Agreement (the "Termination Agreement"). Under that agreement, JWP was to pay Western $283,488. Western alleges JWP paid only $44,295.

On October 25, 1993, JWP filed a voluntary petition for relief under chapter 7 of the Code. On November 11, 1993, Western, by its Vice President and Senior Counsel, James Carpenter, Esq. ("Carpenter"), filed a proof of claim in the amount of $239,193 and attached a copy of the Termination Agreement. Western sought the alleged balance due under the Termination Agreement. On December 26, 1997, the Trustee moved pursuant to § 502 of the Code and Fed.R.Bankr.P. 3007 to expunge Western's claim. The Trustee mailed his papers to Western that same day. He argued that the Debtor had no knowledge of an unpaid balance due to Western.

I held a hearing on the Trustee's Motion on January 30, 1998. Western neither appeared at the hearing nor filed opposition papers. On February 9, 1998, I granted the Trustee's motion. The Order was docketed on February 11, 1998.

Ten months later, on December 4, 1998, Western moved for reconsideration. That motion was returnable January 7, 1999.[2] Carpenter concedes that Western received the Trustee's Notice of Motion and supporting documents.[3] However, he states that due to his office's "untraceable oversight," the papers were not forwarded to him until February 25, 1998. He says he mailed an affidavit in opposition to the Trustee's Motion (the "Opposition Affidavit") that day to the Clerk of the Bankruptcy Court, along with a second copy to be returned to him file-stamped. He says he also served a copy on the Trustee. Carpenter did not receive confirmation of receipt from either the bankruptcy court or the Trustee.

On March 13, 1998, Carpenter says he again sent two copies to the Clerk of the Bankruptcy Court and one copy to the Trustee. Thereafter, Carpenter received a receipt stamped copy from the Bankruptcy Court, dated March 19, 1998. The Trustee never acknowledged receipt of either copy. Carpenter asserts that he attempted, apparently in vain, to contact the Trustee on several occasions.

Seven months later, in October 1998, Carpenter asked Western's outside counsel, LeBoeuf, Lamb, Greene & MacRae L.L.P. ("LeBoeuf"), to investigate this matter. LeBoeuf advised Carpenter that Western's claim had been expunged pursuant to the Order. LeBoeuf also advised Carpenter that the Trustee expected to make a substantial distribution to unsecured creditors. Pursuant to my order of December 9, 1998, the

---

1. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A).

2. I took Western's reconsideration motion under advisement without oral argument.

3. When a party mails pleadings, there is a presumption that they are received three days later. See Fed.R.Civ.P. 6(e); Fed.R.Bankr.P. 9006(f); In re Cassell, 206 B.R. 853, 857 (Bankr.W.D.Va. 1997). Here, I presume that Western received the Trustee's papers on Monday December 29, 1997.

Trustee made an interim distribution to creditors of more than $10 million, about 79% of the value of the claims filed by unsecured creditors.

## LAW

Western moves pursuant to § 502(j) of the Code for reconsideration of my Order expunging its claim.[4] Section 502(j) provides:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11 U.S.C. § 502(j) (1993).

■ An application for reconsideration of an order expunging a creditor's claim may be granted if the movant demonstrates that its failure to respond was due to "excusable neglect." *See In re Colonial Realty Co.*, 202 B.R. 185, 187 (Bankr.D.Conn.1996).[5] Excusable neglect is defined neither in the Code nor the Federal Rules of Bankruptcy Procedure. *See In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 35 (N.D.N.Y.1995). Its precise definition is elusive. It is not, however, a rule designed to excuse all defaults, or even excuse those defaults where relief would not prejudice the other party. *See generally Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501 (2d Cir.1994). The deadlines set by statute are mandates to be followed and defaults under them should not be relieved absent good cause. There are sound policy reasons to limit relief from defaults to those authorized by statute. It is Western's burden to establish that it falls within the "excusable neglect" category.

■ At essence, my determination of whether Western's failure to timely respond is an equitable one, taking account of all relevant circumstances. *See In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 361 (Bankr. S.D.N.Y.1993) (*quoting Pioneer Investment Servs. Co v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). The key question is whether Western's behavior entitles it to equitable relief.

■ Most courts define excusable neglect by those factors enunciated by the Supreme Court in *Pioneer*, 507 U.S. at 380, 113 S.Ct. 1489 (defining "excusable neglect" in context of late filed claims). In *Pioneer*, the Supreme Court enunciated a nonexclusive list of factors for courts to determine whether the movant has met the excusable neglect standard. These factors include: (1) whether there is a danger of prejudice to the debtor; (2) the length of the delay and its potential impact on the judicial proceeding; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See id.* at 395, 113 S.Ct. 1489. Western avers that the *Pioneer* test is not controlling here. Instead, it urges that I use the more lenient standard found in *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir.1996). The Trustee takes no

---

**4.** Arguably, this motion should be a motion to be relieved of a default. However, treating it so, I would apply the same law and reach the same result.

**5.** Federal Rule of Civil Procedure 60(b) provides, in relevant part, "[o]n motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons (1) mistake, inadvertence, surprise, or excusable neglect...." Fed.R.Civ.P. 60(b). Rule 60(b) is made applicable here by Fed.R.Bankr.P. 9024 and courts, in evaluating Code § 502(j) motions, are to apply the standard for relief set forth therein. *See* Fed.R.Bankr.P. 9024; *see also In re Colonial Realty Co.*, 202 B.R. 185, 187 (Bankr.D.Conn.1996); *In re Freightway Corp.*, 170 B.R. 108, 110 (Bankr.N.D.Ohio 1994).

position as to which test should apply. The obvious reason Western wishes to avoid the *Pioneer* standard is that it does not meet it. This motion is strikingly similar to the one in *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31 (N.D.N.Y.1995). In that case, the District Court affirmed the Bankruptcy Court's denial of a motion to reconsider the expungement of a claim based on the claimant's "inexcusable indifference to the bankruptcy process which did not fall under the guise of excusable neglect." *Id.* at 33. However, Western fares no better under the *American Alliance* test.

### AMERICAN ALLIANCE TEST

*American Alliance* interprets "excusable neglect" in context of default judgments. In that case, the Second Circuit held that courts, considering whether to relieve a default should examine: (1) whether the default was willful; (2) whether the movant has a meritorious defense; and (3) the level of prejudice that may inure to the non-defaulting party if the relief is granted. *See American Alliance,* 92 F.3d at 59. Thus, the essence of the *American Alliance* test is threefold: willfulness, meritorious defense and prejudice. I must balance these factors and no single one is dispositive. *See id.* at 62.

A. *Willfulness*

While public policy favors the adjudication of matters on their merits, *see id.* at 61, it is also in the public interest to deter abuses of the legal process. *See Gucci Am. Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999). The later policy is served "by enforcing those defaults that arise from egregious or deliberate conduct." *Id.*

The Second Circuit has interpreted the willfulness standard to include conduct which is deliberate, egregious, or evidencing bad faith. *See American Alliance,* 92 F.3d at 60–61. Mere careless or negligent errors by an attorney or client do not constitute "willfulness." *Id.* at 61. A court may find willful-

ness where there is "bad faith, or at least something more that mere negligence." *Id.* at 60; *see Gucci Am. Inc.,* 158 F.3d at 634 (bad faith is not a necessary predicate to determine that a party acted willfully). "The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *See American Alliance,* 92 F.3d at 61. However, the court recognized that the degree of negligence in precipitating a default is a relevant factor to be considered. "Gross negligence can weigh against the party seeking relief from a default judgment, although it does not necessarily preclude relief." *Id.* To a significant extent, this test is akin to the clean hands doctrine applicable to all equity cases.

Western argues that its "mere oversight" is excusable neglect and permits reconsideration of my order expunging Western's claim. Were the facts in support of that conclusion, I would agree. However, Western's error was more than "mere oversight." Western's internal error that caused Carpenter to receive the Trustee's notice of motion twenty-six days after I heard the Trustee's motion, and sixteen days after my order granting it was docketed, may have constituted "excusable neglect" had Carpenter made a prompt motion for reconsideration. *See id.* at 60 (administrative or clerical errors generally are insufficient grounds to deny motions to vacate). It is Carpenter's actions after he became aware of the existence of the Trustee's motion combined with Western's internal error that reaches the level of wilfulness.

Carpenter acted in bad faith. He became aware of the Trustee's motion on February 25, 1998, nearly two full months after service. He made no effort to determine the status of the Trustee's motion. Rather, he prepared and filed the Opposition Affidavit. That Opposition Affidavit served no purpose. As an attorney, Carpenter knew that if the Trustee's motion was adjudicated, filing an opposition would be ineffectual. Rather than trying to determine the status of the Trustee's Motion, he prepared and filed an extraneous document.[6] Although he claims to have at-

6. Indeed, Carpenter had an ethical obligation to his client, Western, to follow the correct bank-

tempted to contact the Trustee, Carpenter did not attempt to contact the Bankruptcy Court to determine the disposition of the Trustee's Motion.

Carpenter argues that filing the Opposition Affidavit is some indicia of good faith. To the contrary, it illustrates his indifference to bankruptcy procedures. Western's bad faith is further demonstrated by Carpenter's seven month delay in contacting LeBoeuf. A seven month gap between filing a pleading that logically would be rejected and Western's investigation is an intentional and inexcusable delay.

### B. Meritorious Defense

In *American Alliance*, the Second Circuit held that "[t]o satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. 'A defense is meritorious if it is good law so as to give the fact finder some determination to make.'" *American Alliance*, 92 F.3d at 61 (citations omitted). However, the defendant must present evidence beyond conclusory denials, *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993); *but see Richardson v. Nassau County*, 184 F.R.D. 497, at 502 (E.D.N.Y.1999) (meritorious defense found by denying factual allegations), and such evidence, if proven at trial, would constitute a complete defense. *See Enron Oil Corp.*, 10 F.3d at 98.

The Trustee moved to expunge Western's claim because "there was no documentation on how [Western] calculat[ed] the amount due." *Trustee's Application to Expunge* at ¶ 2(m). Western recites the factual background surrounding the Termination Agreement then states, "[a]lthough the Debtor *apparently* made a partial payment of $44,295 to [Western], neither the Debtor nor the Trustee has ever contested the validity of the Termination Agreement or the Debtor's liability for the remaining balance due." *West-*

*ern Memo* at 6 (emphasis added). Western's "defense" is a broad conclusory statement. *See Enron Oil Corp.*, 10 F.3d at 98. Arguably, Western's statement is not a defense. After seven months, Western has produced no documentation to support the calculation of its claim.

In consideration of these two factors alone I find that Western cannot demonstrate excusable neglect.

### C. Prejudice to the Debtor

I also consider whether the Debtor would suffer any prejudice by granting Western's reconsideration motion. "Delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* Here, however, the delay in the filing of a proper motion was prejudicial to the Debtor's estate and its creditors. Creditors have a right to have their claims determined with finality. Inadvertent delays may not be prejudicial. However, in this case, Western's delay was wilful and knowing. In this context, the Debtor's creditors lose the finality of the calculation of the value of their claims due to Western's intentional delay. *See The Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, No. 95 CV 4856, 1998 WL 417510, at *4 (S.D.N.Y. Jul. 24, 1998). This is an inequitable result.

### POLICY CONSIDERATIONS

■ The Bankruptcy Court is a court of equity and, in making my determination, I must balance the equities. *See National Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Western makes this motion with less than clean hands. It cannot be gainsaid that it is guilty of both laches and what the Hub-

---

ruptcy procedures. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.1 (1995) ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); *see also* NEW YORK CODE OF PROFESSIONAL RESPONSIBILITY DR 6–101 (1998) ("A lawyer shall not: (1)

handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it; (2) handle a legal matter without preparation adequate in the circumstances; and (3) neglect a legal matter entrusted to the lawyer.").

bell court called "inexcusable indifference to the bankruptcy process." *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31, 33 (N.D.N.Y. 1995).

Western has the burden of establishing "excusable neglect." It has failed to do so.

### CONCLUSION

Therefore, Western's motion for reconsideration of my order expunging its claim is denied.

Settle order.