**In re ENRON, INC., et al.,
Reorganized Debtors.**

**No. 01–16034(AJG).**

United States Bankruptcy Court,
S.D. New York.

June 14, 2005.

Weil, Gotshal & Manges LLP, New York City (Martin J. Bienenstock, Brian S. Rosen, Of Counsel), Dallas, TX (Martin A. Sosland, Of Counsel), Houston, TX (Melanie Gray, Of Counsel), for Reorganized Debtors.

Schnader, Harrison, Segal & Lewis, LLP, New York City (Richard J. Pelliccio, of counsel), Philadelphia, PA (Barry E. Bressler, Michael J. Barrie, Of Counsel), for Trustees of the University of Pennsylvania.

## MEMORANDUM OPINION GRANTING TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S MOTION FOR RECONSIDERATION AND VACATING THAT PORTION OF ORDER EXPUNGING PROOF OF CLAIM NO. 808800

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### INTRODUCTION

The Trustees of the University of Pennsylvania ("University") request that the

Court reconsider an order entered on November 7, 2003 sustaining Debtors' Sixteenth Omnibus Objection to Proofs of Claim ("Objection"); and, thereby, expunging its Proof of Claim No. 808800 ("Claim"). In the Objection, the University's Claim was listed as "Trustees of the Univ. of PA, the." The University acknowledges that it received notice of the Objection and its counsel reviewed the Objection for the Claim under the listings of "University of Pennsylvania" and "Pennsylvania," but not "Trustees of the Univ. of PA, the." Due to its counsel's failure to review the Objection for the Claim under the correct listing, the University believed that the Claim was not included in the Objection and, as a result, failed to respond. The University now asserts that its failure to respond to the Debtors' Objection constitutes excusable neglect and requests that the Court (i) reconsider its previous order in accordance with 11 U.S.C. § 502(j) and FED. R. BANK. P. 3008, and (ii) vacate the portion of the order that expunged the Claim.

## JURISDICTION

The Court has subject matter jurisdiction under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding pursuant to section 157(b)(2)(A),(B) and (O) of title 28 of the United States Code.

## BACKGROUND

### Debtors' Background

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron Corporation ("Enron Corp.") and certain of its affiliated entities (collectively, the "Debtors," individual entity, "Debtor"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

### Proof of Claim No. 808800

The Claim at the center of this dispute arose as a result of an agreement between the University and the Debtors whereby the Debtors agreed to donate $1 million to the University. In return, the Debtors were given a role in the Wharton Electronic Business Initiative program at the University's business school and were included in certain promotional materials as a donor. The Debtors were to make the donation over a four-year period in equal installments of $250,000. In April 2001, the Debtors made the first $250,000 installment payment to the University. On December 2, 2001, the Debtors filed for bankruptcy and since then have not made any subsequent payments to the University. At the time of filing, the Debtors still owed the University $750,000 under the agreement. The University filed the Claim in the Debtors' bankruptcy proceeding as required by FED. R. BANK. P. 3003(c)(2) in that amount on October 10, 2002. On September 23, 2003, in accordance with FED. R. BANK. P. 3007, the Debtors filed the Objection to the University's Claim. Included in the Objection was the University's Claim, listed as "Trustees of the Univ. of PA, the." The Debtors' Objection created a contested matter under FED. R. BANK. P. 9014.

The Debtors served the Objection upon the University and the Objection was then reviewed by counsel for the University. The legal assistant placed in charge of reviewing the Objection searched for the

University's Claim under the headings of "University of Pennsylvania" and "Pennsylvania," but did not search under the listing of "Trustees of the Univ. of PA, the." As a result, the legal assistant failed to locate the University's Claim in the Objection and determined that the Claim was not included in the Objection. The University, not knowing the Claim was subject to the Objection, failed to file a response by the October 27, 2003 deadline set forth in the Objection.

As a result of its failure to respond, the University's Claim was expunged by a Court order entered on November 7, 2003 ("Order"). The University first discovered the Claim was expunged on March 22, 2004 when counsel for the University inquired as to why the University had not received its ballot to vote on the Debtors' Plan of Reorganization. After further investigation, the University discovered that the Claim was specifically expunged under the Order granting the Debtors' Objection on March 24, 2004. After discovering its error, the University filed the present motion for reconsideration on March 31, 2004 and a hearing regarding the Objection was scheduled for May 13, 2004.

## DISCUSSION

■ As stated, the University, in response to the Order, filed a motion for reconsideration under 11 U.S.C. § 502(j). Courts may reconsider a claim that was previously disallowed based upon the equi-ties of the case. 11 U.S.C. § 502(j).[1] The Court previously discussed the standard for a motion for reconsideration in *In re Enron*, 325 B.R. 114, 117–18 (Bankr. S.D.N.Y.2005) (hereinafter, "*International Paper*"). In *International Paper*, the Court found that a motion for reconsideration is analyzed under the standard set forth in FED.R.CIV.P. ("Rule") 60(b) which applies to bankruptcy proceedings via FED. R. BANK. P. 9024. *Id.* at 117. A motion for reconsideration of an order disallowing a creditor's claim may be granted if the creditor demonstrates its failure to respond was the result of "excusable neglect." *In re JWP Info. Servs., Inc.*, 231 B.R. 209, 211 (Bankr.S.D.N.Y.1999) (citing *In re Colonial Realty Co.*, 202 B.R. 185, 187 (Bankr.D.Conn.1996)). As in *International Paper*, the Court looks to the Second Circuit factors set forth in *American Alliance Insurance, Co., Ltd. v. Eagle Insurance Co.*, 92 F.3d 57 (2d Cir.1996) for deciding a motion for reconsideration under Rule 60(b). *Id.* "These factors include (1) whether the failure to respond was willful, (2) whether the movant had a legally supportable defense, and (3) the amount of prejudice that the non-movant would incur if the court granted the motion." *Id.*

### Willful Factor

■ The first factor in the Second Circuit test is whether the default on the part of the movant was willful. *Am. Alli-*

---

1. Section 502(j) provides:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

*ance,* 92 F.3d at 59. The Second Circuit has interpreted this factor to require something more than just negligence or carelessness on the part of the movant. *Id.* Defaults that are caused by negligence may be excusable, while defaults that occur as a result of deliberate conduct are not excusable. *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d. Cir. 1998) (citing *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998) for the proposition that in cases where a party deliberately defaults and intentionally fails to respond to a pleading or motion the party knew was pending, the willful factor is satisfied, regardless of whether the parties acted in good or bad faith). Conduct on the part of the movant that is in bad faith falls under the willfulness standard and weighs heavily against the movant. *Am. Alliance,* 92 F.3d at 60.

 In addition, the degree of negligence still remains a relevant factor when assessing whether the movant acted in good faith. *Id.* at 60–61 (finding that gross negligence can weigh against a party seeking relief although not necessarily a determinative factor in the outcome of the motion). Further, a court's determination that the movant acted in good faith is not necessarily determinative in regards to the willful factor. *Gucci,* 158 F.3d at 635. Finally, courts are to resolve any doubts in favor of the movant in order to increase the likelihood that disputes will be resolved on their merits. *Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 172 (2d Cir.2001) (citing *Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir.1980)).

The *Gucci* case is an example of an intentional default by the movant and subsequent holding that a "deliberate" default does not warrant relief under RULE 60(b). *Gucci,* 158 F.3d at 635. In *Gucci,* the movants were aware that a claim for damages as a result of a trademark violation was pending against them. The movants made a deliberate or intentional decision to allow a default to be entered against them. *Id.* The District Court determined that "bad faith" was a prerequisite to a finding of "willfulness" and after determining that the movants acted in good faith, granted the motion for relief requested by the movants. *Id.* The Second Circuit reversed the district court decision, holding that bad faith was not a necessary predicate to a finding of willfulness. Rather, the fact that the movants knew that the action was pending and failed to respond, thereby allowing a default to be entered against them was sufficient to satisfy the willful factor. *Id* In the instant case, there is no dispute that the University acted in "good faith," but the relevant analysis focuses on whether its conduct was "willful."

 The University received adequate and sufficient notice of the Objection and the respective hearing date. In addition, the University admits that its counsel reviewed the Objection for its Claim. However, counsel failed to locate the Claim within the Objection, because it did not search under the proper listing. Counsel searched for the Claim under the listings of "Univ. of Pennsylvania" and "Pennsylvania", but not "Trustees of the Univ. of PA, the," even though "Trustees of the Univ. of PA, the," was the name used on the Claim itself, filed by the University. As a result of counsel's failure to review the Objection for the Claim under the proper listing, the University did not discover that the Claim was subject to the Objection until after the hearing date. Thus, the University did not respond to the Objection either by written memorandum or appearance at the hearing. However, the University, upon the realization that its Claim was expunged by the Order almost immediately filed this motion for

reconsideration.[2] The Court will now examine whether considering these facts, the entry of the Order resulted from the University's willful or in other words, "deliberate" default under *Gucci.*

In determining whether the conduct at issue was deliberate, the Court will treat the University's counsel's conduct as conduct of the University. The conduct of an attorney is normally imputed to his client, "for allowing a party to evade 'the consequences of the acts or omissions of [ ]his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'" *McNulty,* 137 F.3d at 738 (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Here, there are no facts present to depart from the general rule stated above. Thus, the University's counsel's actions are imputed to the University.

In addition, the Court will focus on what the University actually knew, and not what, as a legal matter, they would be held to have known based upon the notice it received. The record supports a finding that the University had no actual knowledge of the pending Objection because of its counsel's failure to locate the Claim within the Objection. Therefore, the University's default was without the requisite knowledge of the pendency of the action to have acted in a deliberate manner. Hence, the University knowingly allowed hearing on the Claim to proceed and the Order be entered without its response. Further, and essential to the granting of relief herein, counsel's failure to locate the Claim was the result of a "mistake" in its review of the Objection and was not part of any plan or strategy to further the University's interests. The University's failure to respond to the Objection simply resulted from its counsel's underlying mistake in its review of the Claim. Thus, based upon the foregoing, the default was not deliberate.

Stated otherwise, the University did not make an intentional decision to allow the Court to enter the Order expunging the Claim because it did not know that the Objection was pending. Further, the University's actions once it became aware of the Order are inconsistent with any argument that the University's default was a deliberate act. Rather, it shows that had the University been aware of the pendency of the Objection to the Claim, it would have responded to the Objection rather than allow the Court to enter the Order expunging the Claim without opposition. In addition, there is no evidence, or even an assertion, that the University was attempting, in any way, to delay the claims process or that entry of the Order without opposition was intended as part of some strategy or plan to advance its interests.

In sum, the evidence supports a finding that University did not act deliberately in allowing the Order to be entered because it did not know that a hearing on the Objection to the Claim was proceeding. Based upon the aforementioned, the Court finds that the entry of the Order did not result from willful conduct by the University.

### Legally Supportable Defense

The Second Circuit test also requires that the movant have a legally supportable defense or position within the un-

---

**2.** There is no allegation by the Debtors that University acted wilfully in that they acted deliberately soon after they became aware of the Order and reacted thereafter. The length of delay between the Order and the University's motion for reconsideration is discussed herein in the prejudice analysis.

derlying litigation. *Am. Alliance*, 92 F.3d at 61. In *American Alliance*, the Second Circuit found that in order to satisfy the meritorious defense element, the movant's defense, "need not be ultimately persuasive at this stage." *Id.* at 61. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Id.* (citing *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). In the instant case, there is sufficient evidence to support the notion that the University indeed has a viable claim. The University, in its brief, included a copy of its donation agreement with the Debtors. The Debtors do not dispute that the agreement exists, nor do they dispute that they made an initial installment to the University in accordance with the agreement. While the Debtors may assert other defenses to the Claim, its only assertion in the Objection was that the Debtor's records indicated that no amounts were due to the University. This assertion is contradicted by the evidence, in the form of the contract, put forth by the University. Therefore, it appears that the University may have a meritorious defense to the Objection and this factor weighs in favor of the University.

**Prejudice to the Non–Movant**

The amount of prejudice to the non-movant is the final factor the Second Circuit examines in deciding a motion for reconsideration. *Am. Alliance*, 92 F.3d at 59. Generally, mere delay is not sufficient to demonstrate a sufficient level of prejudice. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983) (citing *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 655–57 (3d Cir.1982)). "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery,

or provide greater opportunity for fraud and collusion.'" *Id.* (citing 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure: Civil, § 2699 at 536–37 (1983)).

The Court notes that regarding the analysis of "Prejudice to the Non–Movant" in *International Paper, supra,* neither party addressed the considerations stated in *Musler,* but rather discussed the prejudice or lack thereof on the administration of the bankruptcy case. Therefore, the Court in *International Paper* limited its analysis to the alleged prejudice to the administration of the case. *Musler* focuses on the prejudice of the relief sought to the non-movant regarding the litigation at issue. The Court, however, finds that in the context of a bankruptcy case, in addition to any arguments raised with respect to the consideration of the prejudice within the context of the litigation itself to the non-movant, a court should consider the impact that the granting of relief may have on the administration of the bankruptcy case, specifically, on the claims adjudication process.

Here, as in *International Paper*, the Debtors do not address the *Musler,* prejudice to non-movant, considerations. Rather, they focus their arguments on the prejudice the delay will have on the administration of the bankruptcy case. Specifically, they argue that the delay will (1) prejudice both the Debtors and their estates, (2) prejudice the Debtors' and creditors' ability to achieve finality in the claims reconciliation process, and (3) undercut the omnibus objection process upon which the Debtors rely to fairly and efficiently resolve claims. According to the Debtors, the these are present because the University "chose" not to respond to the Objection and waited four months af-

ter the Order expunged the Claim to file its motion for reconsideration

Debtors cite to *JWP* to support their contention that they were somehow prejudiced by the delay. 231 B.R. at 209. However, *JWP* involves a factual scenario where the movant failed to file the appropriate motion in a timely fashion after the movant discovered the error that led to the court entering an order. *Id.* at 212. This led to a seven month delay, and the court found that the movant's actions demonstrated an "inexcusable indifference to the bankruptcy process." *Id.* (quoting *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31, 33 (N.D.N.Y.1995)). *JWP* is distinguishable from the current set of facts because unlike the movant in that case, here, there is no indication that the University acted with any bad faith or indifference to the bankruptcy system. In addition, based on the amount of the Claim, there will be a de minimus impact on the claims adjudication process. Finally, the Debtors argue that the University delayed four months after the Claim was expunged to file a motion for reconsideration. Although a significant amount of time passed between the date of the entry of the Order and the University's motion for reconsideration, there is no indication in the record that notice apart from the Order being placed on the electronic docket was separately given to the University. A party awaiting a Court's decision on a matter has an obligation to monitor the docket activity to ascertain whether an order has been entered concerning the matter at issue. However, that presupposes that the party is aware that its matter is under consideration by the Court. Here, the University mistakenly believed that its Claim would not be part of the Order entered by the Court. Therefore, it would not necessarily have had any reason to follow the docket activity to ascertain whether an order had

been entered regarding the Objection. In fact, there is no dispute that upon becoming aware of the Order, the University promptly filed its motion for reconsideration. Thus, this element weighs in favor of the University.

## CONCLUSION

▇ There is a strong preference that courts resolve disputes on their merits. *Brien v. Kullman Indus., Inc.,* 71 F.3d 1073, 1077 (2d Cir.1995). Despite the University's counsel's failure to properly review the Objection for the Claim under the proper name, such negligent conduct does not represent the type of "deliberate" behavior required under *Gucci* to satisfy the "willful" element. In addition, the University produced a copy of the donor agreement with the Debtors that indicates it may have a legally supportable claim. Finally, the Debtors have failed to show that they would suffer any prejudice as a result of the Court granting the University's motion other than a minimal delay to the claims resolution process. In sum, the balancing of the equities weighs heavily in favor of granting the relief requested.

Therefore, the University's motion for reconsideration is granted and it is directed to settle an order consistent with this Memorandum Opinion.