**In re ENRON, INC., et al.,
Reorganized Debtors.**

**No. 01–16034 (AJG).**

United States Bankruptcy Court,
S.D. New York.

May 20, 2005.

Weil, Gotshal & Manges LLP (Martin J. Bienenstock, Esq., Brian S. Rosen, Esq., New York City, Melanie Gray, Esq., Houston, TX, Martin A. Sosland, Esq., Dallas, TX, of Counsel), for Reorganized Debtors.

Baker Donelson Bearman Caldwell & Berkowitz, PC (E. Franklin Childress, Jr., Esq., R. Spencer Clift, III, Esq., of counsel), Memphis, TN, Jaspan Schlesinger Hoffman LLP (Harold D. Jones, Esq., of counsel), Garden City, NY, for International Paper Company.

Milbank, Tweed, Hadley & McCoy LLP (Luc A. Despins, Esq., Matthew S. Barr, Esq., of counsel), New York, NY, for the Official Committee of Unsecured Creditors.

**MEMORANDUM OPINION GRANTING INTERNATIONAL PAPER COMPANY'S MOTION FOR RECONSIDERATION AND VACATING THAT PORTION OF THE ORDER EXPUNGING PROOF OF CLAIM NO. 1390600**

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### Introduction

International Paper Company ("International" or "Claimant") requests that this Court reconsider an order entered on February 5, 2004 sustaining Debtors' Twenty–Fifth Omnibus Objection to Proofs of Claim ("Objection"); and, thereby, expunging its proof of claim no. 1390600 ("Claim"). International asserts that it was in the midst of negotiations with the debtors regarding its claim at the time the

Objection was filed. As a result of the ongoing negotiation process, International did not believe that the Claim was subject to the Objection by the debtors. Thus, International did not review the Objection, and subsequently failed to respond to the Objection in a timely manner. International now asserts that its failure to respond to the debtors' Objection constitutes excusable neglect and requests that the Court (i) reconsider its previous order in accordance with 11 U.S.C. § 502(j) and FED. R. BANK. P. 3008, and (ii) vacate that portion of the order that expunged the Claim.

## JURISDICTION

The Court has subject matter jurisdiction under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding pursuant to section 157(b)(2)(A),(B) and (O) of title 28 of the United States Code.

## BACKGROUND

### Debtors' Background

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron Corporation ("Enron Corp.") and certain of its affiliated entities (collectively, the "Debtors," individual entity, "Debtor"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

### Undisputed Facts

The proof of claim at the center of this dispute arose as a result of the Debtors' rejection of two power supply contracts with the Claimant. The Debtors filed notice of the rejection on September 12, 2002. On October 15, 2002, International filed the Claim in the amount of $1,381,365.41 based upon their alleged damages resulting from the Debtors' rejection of the power supply contracts. The Claim included three exhibits (i) a statement reflecting that the Claim was based upon rejection damages, (ii) copies of both the rejected contract and the notice of rejection, and (iii) a summary of the additional costs International incurred as a result of the rejection.

On August 5, 2003, Rocco Vita, an employee of the Debtors, sent a letter to Donna Reed, an employee of International, stating that additional information was necessary to assess the Claim. During the same time period, Ms. Reed was engaged in discussions with Kevin Boudreaux, an employee of the Debtors, regarding alleged amounts owed by International to the Debtors ("Accounts Receivable"). The parties continued to discuss both the Accounts Receivable and the Claim over the next several months. The next written communication occurred on November 17, 2003 when Harlan Murphy, an attorney for one of the Debtors, sent a letter to International requesting the payment of the outstanding Accounts Receivable. International responded in a letter on November 21, 2003 disputing the amount owed on the Accounts Receivable on various grounds. Also included in that letter was a statement by Ms. Reed indicating that she was aware that the Debtors were disputing the Claim. The letter did not address or provide any of the additional information previously requested by the Debtors regarding the Claim.

The Debtors responded to International's November 21st letter on January 28, 2004. On December 19, 2003, the Debtors filed the Objection to the Claim scheduling an objection deadline of January 20, 2004 and a hearing date of February 5, 2004. International received notice of the Objection, but did not review it because it believed that the Claim would not be included in the Objection because of the on-going negotiations. As a result, it did not respond to the Objection by the deadline of January 20, 2004 or appear at the hearing. Thereafter, an order was entered on February 5, 2004 ("Order") expunging the Claim and various other claims.

On January 28, 2004, Mr. Boudreaux sent an email to Ms. Reed expressing a desire to proceed with negotiations regarding the outstanding Accounts Receivable. The email did not include any information regarding the inclusion of the Claim in the Objection. Nonetheless, communications between the Debtors and International continued regarding both the Accounts Receivable and the Claim. International received notice of the Order on February 20, 2004, when Mr. Boudreaux attached a copy of the Order to an email to Ms. Reed. Soon thereafter, on March 4, 2004, International filed a motion seeking reconsideration of the Order and a hearing on the motion was held on April 1, 2004.

**Procedural Background**

International filed a proof of claim in the Debtors' bankruptcy as required by FED. R. BANKR.P. 3003(c)(2). In accordance with FED. R. BANKR.P. 3007, the Debtors formally objected to International's claim in its Twenty–Fifth Omnibus Objection to Proofs of Claim. The Debtors' Objection created a contested matter under FED. R. BANKR.P. 9014, and a hearing regarding the Objection was set for February 5, 2004. International failed to respond to the Objection, either by written memoranda or appearance at the hearing. This led to what equated to the Court entering a default Order expunging International's claim. In response, International has now filed a motion seeking reconsideration of the Order under 11 U.S.C. § 502(j).

**DISCUSSION**

■■■ As stated, International, in response to the Order, filed a motion for reconsideration under 11 U.S.C. § 502(j). Courts may reconsider a claim that was previously disallowed based upon the equities of the case. 11 U.S.C. § 502(j).[1] In evaluating a motion for reconsideration, courts are to utilize the standard for relief outlined in FED.R.CIV.P. 60(b),[2] *McDuffy v. Novak (In re DeGeorge Fin. Corp.)*, Nos. 99–32300–02(ASD), Civ. A. 3:01CV0009

---

1. Section 502(j) provides:
 A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

2. FED. R. CIV. P. 60(b) provides:
 "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgement, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect...."

118

(CFD), 2002 WL 31096716, at *13 (D.Conn. July 15, 2002) (citing *In re Johansmeyer*, 231 B.R. 467, 470 (E.D.N.Y. 1999)), which applies to bankruptcy proceedings via FED. R. BANK. P. 9024. A motion for reconsideration of an order disallowing a creditor's claim may be granted if the creditor demonstrates its failure to respond was the result of "excusable neglect." *Id.* (citing *In re Colonial Realty Co.*, 202 B.R. 185, 187 (Bankr.D.Conn. 1996)). The Second Circuit looks to three factors when deciding motions for reconsideration under R. 60(b). *Am. Alliance Ins., Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir.1996) (examining "excusable neglect" in the context of a FED. R. CIV. P. 60(b) motion); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). These factors include (1) whether the failure to respond was willful, (2) whether the movant had a legally supportable defense, and (3) the amount of prejudice that the non-movant would incur if the court granted the motion. *Id.*

█ There is, however, a strong preference that courts resolve disputes on their merits. *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir.1995). Indeed, courts resolve any doubts in favor of the movant in order to increase the likelihood that disputes will be resolved on their merits. *Pecarsky*, 249 F.3d at 172 (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir.1980)).

**Willful Factor**

█ The first factor in the Second Circuit test is whether the default on the part of the movant was willful. *American Alliance*, 92 F.3d at 59. The Second Circuit has interpreted this factor to require something more than just negligence or carelessness on the part of the movant. *Id.* Defaults that are caused by negligence may be excusable, while defaults that occur as a result of deliberate conduct are not excusable. *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir.1998) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998) for the proposition that in cases where a party deliberately defaults and intentionally fails to respond to a pleading or motion the party knew was pending, the willful factor is satisfied, regardless of whether the parties acted in good or bad faith). Conduct on the part of the movant that is in bad faith falls under the willfulness standard and weighs heavily against the movant. *American Alliance*, 92 F.3d at 60. In addition, the degree of negligence still remains a relevant factor when assessing whether the movant acted in good faith. *Id.* at 60–61 (finding that gross negligence can weigh against a party seeking relief although not necessarily a determinative factor in the outcome of the motion). Further, a finding of good faith is not necessarily determinative of the willful factor. *Gucci*, 158 F.3d at 635.

The *Gucci* case is an example of an intentional default by the movant and subsequent holding that a "deliberate" default does not warrant relief under FED. R. CIV. P. 60(b). *Gucci America Inc.*, 158 F.3d at 635. In *Gucci*, the movants were aware that a claim for damages as a result of a trademark violation was pending against them and they made a deliberate or intentional decision to allow a default to be entered against them. *Id.* The District Court determined that "bad faith" was a prerequisite to a finding of "willfulness" and after determining that the movants acted in good faith, granted the motion for relief requested by the movants. *Id.* The Second Circuit reversed the district court decision, holding that bad faith was not a necessary predicate to a finding of willfulness. Rather, the fact that the movants knew that the action was pending and

failed to respond, thereby allowing a default to be entered against them, was sufficient to satisfy the willful factor. *Id.* In the instant case, there is no dispute that International acted in "good faith" but the relevant analysis focuses on whether its conduct was "willful."

 International received adequate and sufficient notice of the Objection and the respective hearing date. However, International made a decision not to review the Objection because it assumed that the Claim was not included therein. International made that determination even though it knew that the Debtors were disputing the Claim, evidenced by the November 21st letter written by an International employee to the Debtors detailing the dispute. Further, International acknowledges that it knew that the Claim was being disputed by the Debtors, in that it was one of the issues in the on-going negotiations. However, International explains that because it was engaged in on-going negotiations with the Debtors regarding, inter alia, the Claim, it did not believe the Claim would be the subject of any objection by the Debtors. As a result of that erroneous assumption, it explains, it did not read the Objection. The Court will now examine whether, considering these facts, the entry of the Order resulted from International's willful or, in other words, "deliberate" default under *Gucci.*

In the *Gucci* case, the movants had knowledge of the pending action against them and intentionally decided to not respond. Although their conduct was found to be in good faith by the district court, the circuit court found that the movants' conduct was nonetheless deliberate and, reversing the lower court, determined the default should not be vacated.

In determining whether International's conduct was deliberate, the Court will focus on what International actually knew, and not what, as a legal matter, it would be held to have known based upon the notice it received. The record supports a finding that International had no actual knowledge of the pending Objection because of its failure to review the Objection. While International's decision not to review the Objection was deliberate, that failure resulted in its not knowing of the pendency of the "contested" matter. Therefore, its default was without knowledge of the pendency of the action and, hence, not deliberate in the sense that it made a cognitive decision to allow a hearing on its Claim to proceed and the Order to be entered without its response. Further, and essential to the granting of the relief herein, International's decision not to review the Objection was not part of any plan or strategy to further its interests. Nor could it be found that International purposefully sought to remain ignorant of the pendency of the action. International's failure to review the Objection simply resulted from its underlying erroneous assumption that the Debtor would not object to the Claim while negotiations were proceeding.

In other words, International did not make an intentional decision to allow the Court to enter an order expunging the Claim inasmuch as it did not know, for purposes of determining whether the act was deliberate, that an objection to the Claim was pending. Further, International's actions, once it received notice of the Order, are inconsistent with any argument that its default was a deliberate act. Rather, it shows that had International been aware of the pendency of the Objection to its Claim, it would have responded to the Objection rather than allow the Court to enter an order expunging its Claim without opposition. In addition, there is no evidence, or even an assertion, that International was

attempting to delay the claims process or that entry of the Order was intended as part of some strategy or plan to advance its interests. Although as stated above, a good faith finding is not determinative of the willful factor, in the instant case the facts that would support a good faith finding support the finding that International did not deliberately "allow" the Order to be entered.

In sum, the evidence supports a finding that International did not act deliberately in allowing the Order to be entered because it did not know that a hearing on an objection to its claim was proceeding. Accordingly, the Court finds that the entry of the Order did not result from willful conduct by International.

**Legally Supportable Defense**

■ The Second Circuit test also requires that the movant have a legally supportable defense or position within the underlying litigation. *American Alliance*, 92 F.3d at 61. In *American Alliance*, the Second Circuit found that in order to satisfy the meritorious defense element, the movant's defense, "need not be ultimately persuasive at this stage." *Id.* at 61. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Id.* (citing *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988)). In the current case, International's claim for damages stemming from the Debtors' rejection of an energy contract satisfies this element. The Debtors may dispute the amount of the claim, but it appears to be uncontested that International holds a potential claim.

**Prejudice to the Non–Movant**

■ The amount of prejudice to the non-movant is the final factor the Second Circuit examines in deciding a motion for reconsideration. *American Alliance*, 92 F.3d at 59. Generally, mere delay is not sufficient to demonstrate a sufficient level of prejudice. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983) (citing *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 655–57 (3d Cir.1982)). In addition, "claimants have the right to have their claims determined with finality." *In re JWP Information Services, Inc.*, 231 B.R. 209, 213 (Bankr.S.D.N.Y.1999). In the instant case, there exists a minimal amount of prejudice to the Debtors.

Debtors cite to *In re JWP* to support their contention that they were somehow prejudiced by the delay. 231 B.R. at 209. However, *In re JWP* involves a factual scenario where the movant failed to file the appropriate motion in a timely fashion after the movant discovered the error that led to the court entering an order. *Id.* at 212. This led to a seven month delay and the court found that the movant's actions demonstrated an "inexcusable indifference to the bankruptcy process." *Id.* (quoting *In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 33 (N.D.N.Y. 1995)). *In re JWP* is distinguishable from the current set of facts because unlike the movant in that case, here, International filed its motion for reconsideration in a timely manner. There is no indication International acted with any bad faith or indifference to the bankruptcy system. The prejudice here lies in the possible future consequences to the claims process if a claimant could be excused for not reviewing a document properly and timely served upon them. It is this policy concern that weighs heavily against granting the relief sought herein. However, when viewed in the context of the circumstances surrounding the negotiations, including the various communications regarding the scope of the negotiations, the Court finds that the policy concern is lessened here by, inter alia, the timing of

the Claimant's reaction to correct its error, the plausible explanation of International's failure to review the Objection and the fact there is no demonstrated specific prejudice to the Debtors regarding the Claim itself. Thus, the prejudice to the claims adjudication process that is argued to result from relieving a claimant of its failure to respond to an objection to its claim is tempered here by the unique facts of this case which limit its application.

## Conclusion

The Court is cognizant of the strong preference in favor of resolving disputes on the merits. Despite International's disregard of the Objection, its action ·was based upon the erroneous assumption that the Debtors would not file a formal objection to their Claim inasmuch as the parties were engaged in negotiations regarding the Claim. As discussed above, the Court finds that the Entry of Order did not result from "willful" conduct by International.

In addition, the Debtors have failed to demonstrate that they would suffer any prejudice as a result of the Court granting International's motion, in that a timely proof of claim was filed and the Debtors were already addressing, among other matters, the Objection in the context of the negotiations. Further, the Court's concern, regarding any potential prejudice to the claims adjudication process (i.e., the "floodgates" argument) by relieving a creditor of the consequences of having failed to read a notice it received, is addressed because the availability of the relief is limited by the circumstances of the instant matter. It is a very narrow exception limited to the facts present here which include, inter alia, that (i) the Claimant's conduct surrounding the Claim and the Objection was premised upon an error that had some plausible explanation in the context of the Claimant's active involvement in the claims adjudication process, including the on-going negotiations, (ii) the failure to respond to the Objection was not part of any strategy or plan intended to advance the interests of the Claimant, and (iii) the Claimant promptly engaged in an effort to correct the error. Moreover, even the concern that the relief will be viewed as an invitation to ignore a properly noticed objection to a claim merely because one is negotiating that claim with the debtor is addressed because it was the combination of facts present, including the on-going negotiations, that support the relief. Based upon the foregoing, the Court finds that upon consideration of *American Alliance* factors, the relief requested is warranted.

Therefore, International's Motion for Reconsideration is granted and it is directed to settle an order consistent with this Memorandum Opinion.