**Charles MILLER, Plaintiff,**

v.

**EXPERIAN, Defendant.**

**No. 98 CV 2338 (ADS).**

United States District Court, E.D. New York.

Dec. 2, 1998.

---

Charles T. Miller, Queens Village, New York City, plaintiff pro se.

Jones, Day, Reavis & Pogue, New York City, by Megyn M. Kelly, of counsel, for the defendant Experian.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On this motion by the defendant to vacate the default judgment, the Court finds itself disturbed by the defendant's conduct which contributed to the entry of the default judg-ment. That conduct can only be described as deliberately indifferent to the initial proceedings in this case, and disdainful of the time of the Court and the plaintiff. At issue is whether the defendant's actions rise to the level of "bad faith" warranting denial of their motion.

## I. BACKGROUND

### A. Procedural History of the Case

The plaintiff, Charles T. Miller ("Miller" or "the plaintiff"), initiated this lawsuit on March 27, 1998 by filing a summons and complaint seeking declaratory judgment, injunctive relief and damages against the defendant, "Experian," pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq. The crux of the complaint is that Experian is willfully issuing inaccurate reports bearing on Miller's creditworthiness.

The plaintiff is an individual who resides in Queens Village, New York. The plaintiff alleges that "Experian" is a corporation in the business of supplying credit reports "through its agent, CBA Information Service" to various subscribers, including banks.

The plaintiff evidently was notified by a letter dated October 17, 1996 that:

[Y]our mortgage company, Leader Federal Bank for Savings ("Leader Federal") has chosen to affiliate with Union Planters Mortgage, a division of Union Planters National Bank ("Union Planters")....

...

... Due to the merger, Leader Federal will transfer the servicing of your mortgage loan, that is the right to collect payments from you, to Union Planters effective November 1, 1996.

At an unspecified time thereafter, the plaintiff states that he became "engaged in a billing dispute that Union Planner [sic] was not posting the payments received from Plaintiff, but instead [was] returning those payments to Plaintiff." (Miller Aff., ¶ 9).

According to the plaintiff, Experian "through its agent, CBA Information Service, provided false and inaccurate consumer credit information to [its] subscriber Summit

Bank [by stating in a credit report] that Plaintiff [had] a past due account with ... Leader Federal ... in the amount [of] ... $1,409." (Miller Aff., ¶ 6). The plaintiff contends that the credit report inaccurately indicates that he has a "past due" loan with Leader Federal, when, in fact, his loan is not with Leader Federal but with Union Planter, which has been servicing his mortgage since October 1996. The plaintiff states that he has notified the defendant of this inaccuracy, and that he is involved in a billing dispute with Union Planter, but Experian has "outright refuse[d] to remove [the reference in his credit report to] Leader Federal." (Miller Aff., at ¶ 10). While it is unclear how the plaintiff notified Experian of the inaccuracy, the plaintiff alleges that the defendant has "known" of it since November 1996 (Miller Aff., at ¶ 3). In his complaint, Miller contends that unnamed representatives of Experian have advised the plaintiff that the company cannot make any changes to the credit report without formal "verification" from Leader Federal in the form of a "Certification of Accuracy of Information." The plaintiff states that it is impossible for him to obtain such a certificate, because Leader Federal no longer exists and has no formal business address (Miller Aff., ¶ 7). Allegedly, the defendant has refused to accept the October 17, 1996 letter from Leader Federal to the plaintiff as "verification" of the loan transfer (Miller Aff., ¶ 5).

With his complaint, the plaintiff moved for a temporary restraining order, brought by order to show cause, based on his allegation that "[u]nless this [preliminary injunction] is issued, I will suffer immediate and irreparable injury, loss and damage in that I[am] unable to secure loans and employment with other financial banks." (Miller Aff., ¶ 2).

### 1. The Defendant's Service of the Summons and Complaint

The defendant states that its correct name is "Experian Information Solutions, Inc," not "Experian" as indicated in the caption of this case. In any event, the defendant received the Summons and Complaint on or about March 27, 1998, via facsimile to the defendant's New Jersey branch office. According

to the defendant's attorney, Megyn M. Kelly, Esq. of the law firm of Jones, Day, Reavis & Pogue, she personally received a copy of the summons and complaint on April 1, 1998 (Kelly Aff., at ¶ 2). Approximately three weeks letter, she sent a certified letter to the plaintiff, dated April 22, 1998, stating that service of the summons and complaint was not proper, because it had been faxed to the New Jersey branch office of Experian. The letter indicated, however, that Jones, Day would accept service of process on Experian's behalf. The letter also stated that Miller could personally serve Experian's registered agent for service, "CT Corporation System."

### 2. The April 6, 1998 Hearing and Order

On April 6, 1998, this Court issued an Order directing Experian to show cause why the company should not be enjoined, during the pendency of this action, from reporting and maintaining adverse, inaccurate, disputed, incomplete and unverifiable information on the plaintiff's credit report regarding Leader Federal Bank for Savings. The Order indicated that the matter was to be heard on April 15, 1998 at 9:00 a.m., and that service of a copy of the Order and accompanying affidavit upon the defendant or his counsel must be accomplished on or before April 10, 1998 by certified mail or next day delivery.

### 3. The April 15, 1998 Court Appearance

Neither a representative from Experian nor its attorney appeared at the April 15, 1998 hearing, even though defendant's counsel acknowledges that Experian received the Court's Order to Show Cause on April 13, 1998, two days in advance of the hearing. Due to internal delay, however, "[b]y the time the person at Experian whose responsibility it is to forward such papers to [Jones, Day] received the Order, the hearing date was several weeks past." (Defendant's Memorandum of Law, at 4).

On April 15, 1998, when the defendant did not appear on the scheduled date, this Judge personally placed an on-the-record telephone call to Experian's New Jersey office and spoke with one Robert Giarrataro, who identified himself as a District Manager and in-

structed the Court that the company's counsel is located in California. Mr. Giarrataro provided the Court with the name and telephone number of the appropriate individual to contact at counsel's office. This Court's law clerk later called that California telephone number and spoke with a staff member of Experian's counsel, who stated that service of process on Experian was to be made on the CT Corporation, located at 1633 Broadway, New York, New York 10019. To afford the defendant the opportunity to appear and be heard on the matter, the Court adjourned the hearing to May 4, 1998. Pursuant to Giarrataro's instructions, the Court directed the plaintiff to personally serve the Order to Show Cause and written notice of the May 4, 1998 hearing date on the CT Corporation.

### 4. The May 4, 1998 Court Date

On May 4, 1998, the defendant once again failed to appear in Court for the scheduled hearing date. That day, the plaintiff supplied the Court with an affidavit reflecting that the CT Corporation was personally served with the Order to Show Cause and written notice of the hearing date at the address Experian's California counsel provided—1633 Broadway, New York, New York 10019.

Defense counsel now contends that the plaintiff did not effectuate personal service and disputes the affidavit of service. According to the defendant, CT Corporation never received the papers, and does not employ anyone by the name of "Patti Burell," the individual who accepted the papers on CR Corporation's behalf.

Regardless, when the defendant failed to appear on May 4, 1998, the Court issued a Temporary Restraining Order which stated that pursuant to Rule 65, the defendants were temporarily restrained and enjoined from reporting the consumer credit information with regard to Leader Federal Bank for Savings. The Court's Order directed the plaintiff to personally serve the TRO on the CT Corporation on or before May 8, 1998 at 5:00 p.m. The Order stated that a show cause hearing was to be held before the Court on May 22, 1998, at 3:30 p.m.

### 5. The May 22, 1998 Hearing

Once again, on May 22, 1998, the defendant declined to appear. On that date, the plaintiff provided proof of personal service on the CT Corporation, and service by certified mail on Experian's corporate offices in New Jersey.

Experian concedes that on May 5, 1998, Miller attempted to accomplish personal service, but that the CT Corporation refused to accept service of process because Miller named only "Experian" in the papers, and not "Experian Information Solutions, Inc." The CT Corporation stated that it receives service for five different companies that begin with the name "Experian." For this reason, the Service of Process Supervisor at CT Corporation mailed all the papers back to the plaintiff with a cover letter indicating why the papers were being rejected. That letter was forwarded to the Clerk of the Court and was docketed.

Experian now suggests that Jones, Day, rather than the CT Corporation, should have been served with these papers because by this date, the plaintiff had received Kelly's April 22, 1998 certified letter, which stated that the law firm was representing Experian. The Court disagrees, since Kelly's April 22, 1998 letter to Miller states that service on the CT Corporation is acceptable. The Court further observes that Kelly's letter does not indicate that Miller must specify which "Experian" is being served when delivering papers to CT Corporation, thereby undermining the defendant's ground for rejecting the papers.

In any event, at the May 22, 1998 hearing, the Court noted Experian's failure to appear, plead or otherwise defend itself in this case. In addition, this Court heard the plaintiff's testimony, which it found to be credible, regarding the factual background of his dispute with Experian, the company's willful violation of the FCRA, and the damages he has sustained as a result of Experian's issuance of credit reports containing false information. The Court also reviewed documentary evidence in support of the plaintiff's claim, including a credit report issued by Experian

containing inaccurate information concerning the plaintiff's debts, and a document bearing Experian's letterhead which reflects that Experian issued this false information on approximately twenty-two occasions to at least ten different financial institutions.

### 6. The Court's May 28, 1998 Order

In view of the foregoing, on May 28, 1998, the Court found that Experian had failed to appear, plead or otherwise defend this action, and directed that default judgment be entered in favor of the plaintiff, against the defendant Experian, in the form of: (1) damages resulting from pain, suffering, emotional distress and humiliation in the sum of $5,000.00; (2) damages resulting from increased credit card interest payments in the amount of $2,000.00; (3) loss of vacation days in the sum of $300.00; (4) travel expenses in the amount of $36.00; (5) filing fees in the amount of $ 155.00; (6) the cost of service of process totaling $145.55; and (7) punitive damages in the amount of $5,000.00, pursuant to 15 U.S.C. § 1681(n), for the defendant's willful noncompliance with the FCRA, in the total sum of $12,636.55. The Court further granted the plaintiff a permanent injunction enjoining Experian from maintaining and reporting, on the plaintiff's credit report, inaccurate, incomplete and disputed credit information regarding Leader Federal Savings.

### 7. The Defendant's Motion to Vacate the Default Judgment

Several weeks later, in motion papers dated July 6, 1998, Experian moved to vacate the default judgment.

## II. DISCUSSION

### A. Setting Aside a Default Judgment: The Rule 60 Standard

Rule 60(b)(1) provides, in relevant part, as follows:

(b) Mistakes; Inadvertence; Excusable Neglect; ... On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake,

inadvertence, surprise, or excusable neglect. . . .

Fed.R.Civ.P. 60(b)(1). In considering a motion to vacate pursuant to Rule 60(b)(1), in the default judgment context, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1077 (2d Cir.1995). In this Circuit, it is well settled that those criteria are as follows: (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. *Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998); *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir.1996).

In applying this analysis, the Court is mindful of the longstanding preference that litigation disputes be resolved on the merits. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). Any doubts as to whether a default judgment should be vacated will be "resolved in favor of trial on the merits." *Id.* at 98. A " 'district court's grant or denial of relief under Rule 60(b), unless rooted in an error or law, may be reversed only for abuse of discretion.' " *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir.1994) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 [D.C.Cir. 1988] ).

### 1. Was the Default "Willful?"

In *American Alliance*, the Second Circuit explained that a default caused by a filing mistake on the part of the defendant's in-house counsel was not "willful" for the purposes of cases interpreting Rule 60(b)(1). *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d at 61. The rationale for this holding was that the Court "s[aw] no reason to expand this Court's willfulness standard to include careless or negligent errors in the default judgment context." *Id.* As the Second Circuit recently clarified in *Gucci America, Inc., Guess?, Inc. v. Gold*

*Center Jewelry,* 158 F.3d 631, 634 (2d Cir. 1998):

> "In the course of our analysis in *American Alliance,* we observed that this Court 'will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error.... We illustrated our point by contrasting two cases, one involving a negligent filing error (where we found excusable neglect) and the other involving a deliberate decision to default (where we found that the default was not excusable). *See American Alliance,* 92 F.3d at 60. Later in the opinion, we further observed that the public interest in deterring abuses of process would be sufficiently served 'by enforcing those defaults that arise from egregious or deliberate conduct.' *Id.* at 61.
>
> It seems to us clear that the analysis in *American Alliance* did not intend to suggest that a finding of bad faith is a necessary predicate to concluding that a defendant acted 'willfully' for the purposes of Rule 60(b)(1). Instead, we merely sought to contrast defaults caused by negligence, which may in some cases be excusable, with defaults resulting from deliberate conduct, which are not excusable.... Thus, while a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted deliberately.

Application of these standards reveals that this is a borderline case, because Experian, its California counsel and its registered agent for service, the CT Corporation, came very close to "bad faith" conduct. At the very least, they were negligent and deliberately indifferent in handling this matter. At worst, they displayed a disrespectful attitude toward the Court and the seriousness of this proceeding.

In the Court's view, Experian had adequate notice of at least two of the hearings, and it made no effort to appear or obtain an adjournment from the Court. For example, Experian admits that it knew about the April 15, 1998 hearing two days in advance, but deliberately did nothing to communicate with the Court, to arrange for representation at the hearing or to request an adjournment. In a similar display of indifference and technical obstruction, when Miller attempted to serve CT Corporation with the May 4, 1998 TRO, as well as his summons and complaint, CT Corporation refused to accept service of process because the plaintiff only named "Experian" on his pleadings. Of course, the appropriate action would have been to challenge the caption of the case or service of process before this Court, and not to unilaterally reject the papers and ignore the entire proceeding. This conduct is especially troubling given that the plaintiff is proceeding pro se, and this Judge and his law clerk personally called Experian's California counsel to advise him of these proceedings.

Nevertheless, bearing in mind the strong preference for resolution of disputes on the merits, the Court concludes that this may not be the sort of "willfulness"and "bad faith" contemplated in *American Alliance* —although it is a close call. Giving the defendant the benefit of the doubt, a generous review of the affidavits and exhibits submitted permits the conclusion that a confluence of factors, including deliberate indifference, inadvertence and laxness was to blame for the defendant's default. The Court also notes with approval the apologetic tone adopted by Ms. Kelly during oral argument. While the defendant's conduct was inappropriate, as noted above, defense counsel's papers and her fine oral presentation persuade the Court that it falls short of the "bad faith" and willful conduct required by the Second Circuit.

According, the Court, in its exercise of discretion, finds that the default was not "willful."

### 2. *Does Experian Have a Meritorious Defense?*

The Second Circuit has stated that a "defense is meritorious if it is good at law so as to give the fact-finder some determination to make." *American Alliance,* 92 F.3d at 61. Without going into all the details Experian's alleged defense, the Court finds that it has made such a showing. Experian alleges that it maintains "reasonable procedures" in re-

porting consumer credit information, as required under 15 U.S.C. § 1681(b), that Experian made timely changes to Miller's credit report, as requested, and that Miller's credit report now includes his statement challenging the past-due account. In view of these factors, the Court concludes that Miller has stated a meritorious defense.

### 3. Will the Plaintiff be Prejudiced by Vacatur of the Default Judgment?

The Court also concludes that no prejudice will result if the default judgment is vacated. Experian promptly made the instant motion just a few weeks after the default judgment. During that short period, no evidence has been lost or destroyed, and no witnesses have become unavailable or lost their memory regarding pertinent events.

In sum, the Court finds that it is appropriate to vacate the default judgement. Accordingly, the defendant's motion is granted.

### B. Payment to the Plaintiff For Wasted Time

Finally, during oral argument, defense counsel agreed to pay the plaintiff the sum of $1,000 to compensate him for lost pay and other expenses associated with his numerous Court appearances. The Court finds that this offer is appropriate and commendable, and orders that is be done within twenty (20) days from the date of this decision.

### III. CONCLUSION

Having reviewed the parties' submissions, heard oral argument, and for the reasons stated above, it is hereby

ORDERED, that the defendant's motion to vacate the judgment of default is granted; and it is further

ORDERED, that the Clerk of the Court is directed to re-open the case; and it is further

ORDERED, that the defendant shall serve and file an answer and a proposed amended caption setting forth the correct name and address of the defendant within twenty (20) days of the date of this Order; and it is further

ORDERED, that the plaintiff's motion for a temporary restraining order and preliminary injunction is referred to United States Magistrate Judge Michael L. Orenstein, to conduct a hearing, if necessary, and to issue a report and recommendation; and it is further

ORDERED, that the parties are directed to report to Judge Orenstein forthwith for purposes of scheduling any such hearing; and it if further

ORDERED, that the Court directs the defendant to pay the plaintiff the sum of $1,000 to compensate him for lost earnings and other expenses associated with his numerous Court appearances within twenty (20) days from the date of this decision.

**SO ORDERED.**