NATIONAL CASUALTY COMPANY, Plaintiff,

v.

AMERICAN SAFETY CASUALTY INSURANCE COMPANY, City Waste Services of New York, Inc., and Joel Lopez, Defendants.

No. 10 Civ. 2820(JSR).

United States District Court, S.D. New York.

Aug. 23, 2011.

Ann M. Odelson, Jonathan A. Messier, Carroll, McNulty & Kull, New York, NY, for Plaintiff.

Meryl R. Lieberman, Eric David Suben, Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On November 29, 2010, the Court granted a motion for default judgment filed by plaintiff National Casualty Company ("Na-

tional Casualty") against defendants Joel Lopez and City Waste Services of New York, Inc. ("City Waste"). On May 25, 2011, counsel for City Waste convened a joint conference call to Chambers and requested permission to file a motion to vacate the default judgment. The Court granted the request. City Waste filed moving papers on June 10, 2011; National Casualty filed opposition papers on July 1, 2011; and City Waste filed reply papers on July 11, 2011. After careful consideration and for the reasons stated in this Memorandum Order, City Waste's motion to vacate the default judgment is hereby denied.

The above-captioned insurance coverage dispute arises out of an underlying personal injury action filed in the Supreme Court of New York, Bronx County, on November 7, 2008. *See Salva v. City Waste Services of New York, Inc.*, No. 08–309214 (N.Y.Sup.Ct.) (the "*Salva* Action"). The verified complaint filed in that action alleges that Joel Lopez, then an employee of City Waste, "cut off" plaintiff Hector Salva while driving on the Major Deegan Expressway at or near the West 230th Street entrance ramp. Lopez and Salva subsequently drove to 5987–A Broadway in the Bronx, where both men exited their vehicles and became involved in a verbal altercation. Salva alleges that at some point during this altercation, Lopez struck him on the head with a metal pole, causing him severe injury.

At the time of the altercation, City Waste was covered by two insurance policies: a Commercial Auto Policy issued by National Casualty and a Commercial General Liability Policy issued by American Safety Casualty Insurance Company ("American Safety"). In December 2008, City Waste sent a notice of claim to its insurance broker John A. Rocco Company, which then forwarded the notice to National Casualty. *See* Declaration of James Tesi, dated June 6, 2011 ("Tesi Decl.") ¶ 2. Upon being informed of the lawsuit, National Casualty advised City Waste and Lopez that it would provide a defense subject to a complete reservation of rights. *See* Am. Compl. ¶¶ 25–26. National Casualty retained the law firm of Ahmuty, Demers & McManus (the "Ahmuty law firm") to represent City Waste and Lopez in the *Salva* Action; according to City Waste, the Ahmuty law firm did in fact provide such representation in the ongoing *Salva* Action until March of 2011. *See* Tesi Decl. ¶ 2.

Meanwhile, on March 31, 2010, National Casualty filed in this Court a "Complaint for Declaratory Relief" under 28 U.S.C § 2201 against American Safety, City Waste, and Lopez seeking, *inter alia,* a declaratory judgment that National Casualty had no obligation to defend or indemnify City Waste or Lopez in the *Salva* Action. *See* Compl. ¶ 39(a), (b). On April 6, 2010, National Casualty served a copy of the complaint on City Waste at its place of business in Jamaica, New York; service was accepted by Milton Little, a "maintenance supervisor" employed by City Waste. *See* Affidavit of Juan Pereira, dated June 1, 2011 ("Pereira Aff."); Docket No. 5 under 10 Civ. 2820.[1]

On May 5, 2011, American Safety moved to dismiss the complaint. Following full briefing and oral argument, the Court granted American Safety's motion to dismiss, without prejudice to National Casual-

---

1. National Casualty also served Joel Lopez with a copy of the complaint. *See, e.g.,* Docket No. 4 under 10 Civ. 2820. However, since Lopez has not moved to vacate the default judgment entered against him, the Court need not detail the multiple, ultimately successful efforts made by National Casualty to serve Lopez or Lopez's multiple failures to appear in this action.

ty's filing an amended complaint by no later than July 21, 2010. *See* 07/09/10 Order. The Court ordered that if American Safety moved to dismiss the amended complaint, oral argument would be heard on September 1, 2010. The Court's Order further indicated that "[d]efendants City Waste Services and Joel Lopez, who have not yet appeared in this action, must also appear at the September 1 conference and must also answer or move against the amended complaint by September 1, 2010, failing which they will be deemed in default." *Id.*

On July 21, 2010, National Casualty filed an amended complaint again seeking, among other things, "a declaration that the Plaintiff National Casualty has no obligation to provide a defense or indemnification to City Service and/or Lopez for the claims asserted against them in the Underlying Action." Am. Compl. ¶ 53(a). National Casualty served a copy of the amended complaint on City Waste at its place of business on August 5, 2010; service was accepted by John Perrino. *See* Declaration of Ann M. Odelson, dated July 1, 2011 ("07/01/11 Odelson Decl."), Ex. D. Proof of service was filed with the Clerk of the Court.[2] *Id.* National Casualty also served a copy of the Amended Complaint on the New York Secretary of State. *See* 07/05/11 Odelson Decl. Ex. C. Further, by correspondence dated July 30, 2010, counsel for National Casualty informed City

Waste that it was required to appear in Court for the September 1, 2010 conference, and that failure to answer the amended complaint by that date would result in default. *See* Declaration of Ann Odelson, dated November 5, 2010 ("11/05/11 Odelson Decl.") Ex. F. The letter attached a copy of the Court's July 9, 2010 Order. *Id.* The conference was subsequently adjourned to October 13, 2010. City Waste failed to answer the complaint by September 1, 2010 and failed to appear at the October 13, 2010 conference.[3]

On November 9, 2010, National Casualty filed a motion for default judgment against City Waste returnable on November 29, 2010. *See* Docket Nos. 34–36. A copy of National Casualty's Motion for a Default Judgment was served on City Waste and accepted by John Perrino on November 5, 2010. *See* Docket No. 32. City Waste failed to oppose the motion or to appear in Court on the November 29, 2010 return date. Accordingly, on November 29, 2010, the Court granted National Casualty's motion for a default judgment. *See* Docket No. 37.[4]

A copy of the default judgment was served on City Waste and accepted by Dino Murphy on December 10, 2010. *See* Docket No. 40. On February 4, 2011, National Casualty sent a letter to City Waste stating that it would no longer pay for City Waste's defense in the *Salva* Action. *See* 07/01/1 Odelson Decl., Ex. F. By letter

---

2. Although proof of service was not docketed, the copy provided to the Court indicates that it was received and stamped by the Clerk of the Court on August 18, 2010. *See* 07/05/11 Odelson Decl. Ex. D.

3. Following the October 14, 2010 oral argument, the Court issued a "bottom-line" Order dismissing the complaint with respect to American Safety on November 1, 2010. The Court issued a Memorandum Order explaining the reasons for its decision and directing entry of final judgment on December 2, 2010.

4. Specifically, the Court ordered: "That the plaintiff National Casualty Company['s] motion for a Default Judgment is granted in all respects and plaintiff, National Casualty Company, is not required to defend and/or indemnify City Waste Services of New York, Inc., and Joel Lopez in an underlying action styled *Hector Salva v. City Waste Services of New York, Inc. and Joel Lopez* bearing index number 08/309214 as they are not entitled to coverage under the National Casualty policy and for other relief as this Court deems just." *See* 11/29/10 Default Judgment.

dated March 22, 2011, the Ahmuty law firm informed City Waste that it had received an order permitting it to withdraw as counsel in the *Salva* Action. Tesi Decl. ¶ 3. After receiving this letter, City Waste endeavored during the month of April to obtain counsel, eventually retaining the law firm of Trivella, Forte & Smith, LLP ("Trivella") to represent it in this matter. *Id.* On May 25, 2011, roughly fourteen months after the filing of National Casualty's initial complaint in this case and six months after the entry of default judgment, City Waste's newly retained counsel requested permission to file the instant motion to vacate the default judgment.

■ City Waste's motion is premised upon Rule 60(b)(1) of the Federal Rules of Civil Procedure, which provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. Rule 60(b)(1). In applying Rule 60(b)(1) in the context of default judgments, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983). These criteria include "(1) whether the default was willful; (2) whether defendant has a

meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Id.*[5]

■ Applying this three-part test, the Court finds that all three factors weigh against granting City Waste relief from the default judgment in this case. Although willfulness in the context of a judgment by default requires "something more than mere negligence," the "degree of negligence in precipitating a default is a relevant factor to be considered." *American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57 (2d Cir.N.Y.1996). *See also New York v. Green,* 420 F.3d 99, 108 (2d Cir.N.Y. 2005) (internal quotation marks and citations omitted). "[G]ross negligence can weigh against the party seeking relief from a default judgment," though it does not necessarily preclude relief. *American Alliance,* 92 F.3d at 61. For the reasons explained below, there is no doubt that City Waste's failure to take any action whatsoever in this matter for over a year was grossly negligent at best and very likely "egregious and deliberate," *id.,* at worst.

In defense of its inaction, City Waste first offers two technical arguments, neither of which is remotely persuasive. First, City Waste argues that National Casualty did not serve the complaint and

---

**5.** Pursuant to Rule 60(c), "[a] motion under Rule 60(b) must be made within a reasonable time ... [and] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. Rule 60(c)(1). In this case, an argument can be made that City Waste's six-month delay in seeking relief from the default judgment was not reasonable. *See, e.g., Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329, 336 (2d Cir.1986) (holding that the district court did not abuse its discretion in determining that motion to set aside default made at least seven months after defendant learned of entry of default was not made within a reasonable time); *Amoco Overseas Oil Co. v. Compagnie Nationale Al-* *gerienne de Navigation,* 605 F.2d 648, 656 (2d Cir.N.Y.1979) ("[A]s the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was reasonable.") (internal quotation marks omitted); *La Barbera v. Whitney Trucking, Inc.,* 245 F.R.D. 142, 146 (S.D.N.Y.2007) (determining that defendant's seven-month delay in filing a motion to vacate after learning of default judgment was not reasonable). However, the Court need not reach this question because it concludes that all of the relevant factors weigh against granting City Waste's Rule 60(b)(1) motion for relief in any case.

amended complaint in accordance with Rule 4(h) of the Federal Rules of Civil Procedure. *See* Memorandum of Law in Support of Defendant City Waste Services of New York, Inc.'s Application to Vacate a Default Judgment ("City Waste Mem.") at 4. Rule 4(h)(1) provides that service upon a corporation may be made "in the manner prescribed for individuals by subdivision (e)(1)." Fed.R.Civ.P.R. 4(h)(1). Rule 4(e)(1), in turn, provides that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed R. Civ. P.R. 4(e)(1). The applicable New York provision, Section 311(a)(1) of the New York Civil Practice Law and Rules, provides that personal service may be effected by delivery of the documents to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other an agent authorized by appointment or by law to receive process." N.Y. C.P.L.R. § 311(a)(1). Here, City Waste argues: (1) that service of the original complaint was made upon Milton Little, a person not authorized to receive service under Section 311; and (2) the Court docket contains no affidavit of service of the amended complaint. *See* City Waste Mem. at 5–6.

■ With respect to the original complaint, under New York law a process server is entitled to rely upon the representations of an employee who claims to be authorized to receive service of process. *Fashion Page Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272–73, 428 N.Y.S.2d 890, 406 N.E.2d 747 (N.Y.App.Div.1980). There is no evidence before the Court that Mr. Little ever reported to the server that he had no such authorization, and National Casualty's process server thus reasonably believed Mr. Little was authorized to receive service on behalf of City Waste. In any event, as explained in more detail below, it is undisputed that City Waste received the original complaint and forwarded it to its insurance broker. *See*

Tesi Decl. ¶ 3. *See also Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272, 428 N.Y.S.2d 890, 406 N.E.2d 747 (N.Y.1980) ("if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained").

With respect to the amended complaint, a copy of an affidavit memorializing service of process upon City Waste through its authorized agent John Perrino was filed and stamped by the Clerk of Court on August 18, 2010. *See* 07/05/11 Odelson Decl. Ex. D. The fact that it appears that the Clerk of the Court neglected to enter a copy of this document on the electronic docket is irrelevant. Moreover, it is again undisputed that City Waste received a copy of the amended complaint. *See* Tesi Decl. ¶ 3. Additionally, National Casualty filed a copy of the amended complaint upon the New York Secretary of State, thereby ensuring that City Waste was properly served. *See* N.Y. Bus. Corp. Law § 304 ("The secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served."). Accordingly, City Waste was properly apprised of the pending action by no later than August 2010, seven months before it took any action in the case.

City Waste's second technical argument, that National Casualty failed to comply with this Court's Individual Rules prior to initiating default motion practice, is frivolous. Rule 2(b) of the Court's Individual Rules provides that "[i]n order to bring on any contemplated motion or application of any kind whatever, ... *counsel* for all affected parties must jointly call Chambers." Because no attorney had entered an appearance on behalf of City Waste, and because it is well established under the rules of this Circuit that a corporation may not appear *pro se, see Dial–A–Mat-*

*tress Franchise Corp. v. Page,* 880 F.2d 675, 677 (2d Cir.N.Y.1989), it was impossible for National Casualty to initiate a conference call with City Waste.[6]

Apart from these unpersuasive technical arguments, City Waste's central contention is that its actions (or rather, inactions) were merely negligent rather than willful because the employees at City Waste purportedly believed that National Casualty was providing City Waste with a defense in both the *Salva* Action and the instant action. Accordingly, when City Waste "received the complaint and amended complaint in this federal action in March 2010 and July 2010," it "mistakenly believed the action was part of the *Salva* personal injury claim and immediately forwarded the pleadings to City Waste's broker Mr. Rocco with a request that he notify the carrier and obtain a legal defense for City Waste Services of New York, Inc." Tesi Decl. ¶ 3. City Waste therefore argues:

> The evidence shows at most negligence in failing to file an Answer or respond to the default application. City Waste's CFO Mr. Tesi states that he was not aware that City Waste was not responding to the Summons and Complaint or motion for default prior to the expiration of City Waste's time to answer the complaint and oppose the motion. He became aware only after consulting counsel when City Waste in March 2011 received notice that counsel appointed by Plaintiff as City Waste's counsel in the *Salva* action was withdrawing. Mr. Tesi attaches to his 6/6/11 Declaration at

Exhibit E facsimiles demonstrating that upon receiving pleadings and interlocutory papers in this action City Waste forwarded them to its insurance broker. City Waste mistakenly believed defense of this legal action was covered by the insurance policy and that their broker would notify the carrier who would assign counsel to defend them herein. This mistake is plausible since Plaintiff had already assigned counsel to City Waste in the *Salva* action who was handling their legal matters. As lay people the officers of City Waste saw the carrier's name in the action and mistakenly believed it was related to the *Salva* action for which City Waste had counsel. City Waste management therefore mistakenly believed they were obtaining counsel to defend them herein. Upon realizing their error City Waste immediately sought counsel to defend their interests and correct the default. City Waste's management was not neglecting their duties to obtain counsel and otherwise defend the action; they merely were mistaken in their belief that the carrier would provide counsel to defend their interests in this action.

City Waste Mem. at 3–4.

This explanation strains credulity. As National Casualty points out in its opposition papers, the statements in Tesi's declaration are contradictory. If it were true, as Tesi claims, that he assumed that the Ahmuty law firm was providing a defense in this federal action, *see* Tesi Decl. ¶ 4,

---

**6.** *See also La Barbera v. Whitney Trucking, Inc.,* 245 F.R.D. 142, 146 n. 4 (S.D.N.Y.2007) ("Whitney argues that plaintiffs violated this Court's Individual Rules by failing to obtain permission to file the motion for default judgment by way of a telephone conference with Chambers with all parties on the line. *See* Whitney Reply Mem. at 1–3. However, as the Court noted at oral argument on this motion, *see* transcript, 8/22/07, plaintiffs filed the mo- tion for default judgment in accordance with the Court's instructions at an in-court conference on 7/11/06, at which Whitney failed to appear, *see* transcript, 7/11/06. Further, the fact that plaintiffs may have served Whitney with the default papers a few days later than they stated they would, *see* Whitney letter dated 8/29/07, has no bearing on the outcome of this motion.").

there would have been no need to forward the complaint to City Waste's insurance broker to obtain an assignment of defense counsel. Moreover, City Waste never provided a copy of the complaint to the Ahmuty law firm or mentioned the instant action in its correspondence with that firm. *See* Memorandum of Law in Opposition to City Waste Services of New York, Inc.'s Motion to Vacate Default Judgment ("National Waste Opp.") at 10–11. Additionally, the Court agrees that any "mistake" concerning the nature of this lawsuit must have been short-lived. Over the course of seven months, National Casualty personally served City Waste with the following documents: (1) the complaint, via personal service; (2) the Amended Complaint, via personal service and service upon the New York Secretary of State; (3) a July 30, 2010 letter advising City Waste to answer the amended complaint and to appear for a Court conference scheduled for September 1, 2010 or face entry of default; (4) the Motion for Default Judgment, also via personal service; and (5) the Court's Default Judgment. Finally, it must be emphasized that City Waste had only to read the *caption* of the instant action—*"National Casualty v. American Safety Casualty Insurance Company, City Waste Services of New York, Inc., and Joel Lopez "*—to know that it was in fact *being sued by National Casualty.* It therefore borders on the preposterous for City Waste to suggest that it believed it was being represented by National Casualty in an action filed against City Waste by National Casualty itself.

Under these circumstances, the Court must conclude that City Waste's failure to take any action in this case was "egregious and deliberate," or, at the very least, grossly negligent. City Waste's egregious conduct weighs heavily against it in the Court's analysis. *See American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.N.Y.1996).

Moreover, the other two factors relevant to adjudicating a Rule 60(b)(1) motion similarly counsel against granting relief in this case. First, the absence of a meritorious defense is sufficient to support a district court's denial of a Rule 60(b) motion. *See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 174 (2d Cir.2004). Whether a defense is meritorious is measured by "whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir.1993).

In this case, National Casualty issued a Commercial Auto (Business Auto or Truckers) Policy numbered CAO0208837 to City Waste with liability limits of $1,000,000 per accident or loss that was in effect for the policy period July 31, 2007 to July 31, 2008. *See* 07/01/11 Odelson Decl., Ex. A. Subsection A of Section II of the Liability Coverage states:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

*Id.* Subsection B provides that "this insurance does not apply to any of the following: 1. Expected or Intended Injury." *Id.*

New York courts have held that "the determination of whether an accident has resulted from the use or operation of a covered vehicle requires consideration of whether, *inter alia,* the accident arose out of the inherent nature of the vehicle and whether the vehicle itself produced the injury or, in other words, whether the use of the vehicle was a proximate cause of the injury." *Eagle Ins. Co. v. Butts,* 269 A.D.2d 558, 558–59, 707 N.Y.S.2d 115 (N.Y.App.Div.2000). Where the operation or driving function of an automobile or the

condition of the vehicle itself is not the proximate cause of the injury, the occurrence does not arise out of its use or operation. *McConnell v. Fireman's Fund Am. Ins. Co.,* 49 A.D.2d 676, 677, 370 N.Y.S.2d 730 (N.Y.App.Div.1975).

Another judge of this Court recently construed these principles in *RLI Insurance Co. v. Premier Coach, Inc.,* No. 06 Civ. 3426(NRB), 2008 WL 282126 (S.D.N.Y. Jan. 25, 2008), a case in which a bus driver, Wardell Parker, exited a bus and assaulted two individuals, Philip G. Palmieri and Edward Flaherty. The Court granted summary judgment to RLI Insurance Company, whose policies with the bus charter service corporation Premier Coach contained provisions almost identical to the ones at issue in this case. The Court reasoned:

> It is well-established under New York law that an assault is not an "accident" covered under an automobile liability policy. *Calvert Ins. Co. v. CIGNA Ins. Co.,* 239 A.D.2d 243, 658 N.Y.S.2d 12 (1st Dept.1997) ("Nor does the assault come within the coverage of defendant's policy, which extends only to bodily injury "caused by an accident", as that term is commonly construed in the context of an automobile insurance policy")....
>
> Here, the injuries suffered by Palmieri and Flaherty were the result of a physical altercation between themselves and Wardell Parker. They did not arise from any "accident," under any definition of that word. Especially in light of Parker's conviction for assault, it is incontrovertible that an assault took place. Even beyond the question of whether the losses arose from an accident, RLI's Policy limited coverage to accidents that "result[ ] from the ownership, maintenance or use of a covered auto." This requirement is not met here because use of the bus was not the proximate cause of Palmieri and Flaherty's injuries. The

use or ownership of the bus may have been the but-for cause of the incident, in the sense that had Parker not been driving the bus, the incident would not have occurred, but use or ownership was not the proximate cause of their injuries in the legal sense. "Where the operation or driving function of an automobile or the condition of the vehicle itself is not the proximate cause of the injury, the occurrence does not arise out of its use or operation" *United Servs. Auto. Assn. v. Aetna Cas. & Sur. Co.,* 75 A.D.2d 1022, 1023, 429 N.Y.S.2d 508, 510 (4th Dept.1980); *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir.1994) ("When the court interprets an insurance policy excluding from coverage any injuries 'caused by' a certain class of conditions, the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings.") *See also Calvert,* 239 A.D.2d at 243 [658 N.Y.S.2d 12] (alleged assault of a passenger on a school bus did not arise out of the use of that vehicle).

*Id.* at *4. These principles are directly applicable to the instant case. Here, although the use of vehicles may have been the but-for cause of the altercation between Salva and Lopez in that the dispute allegedly arose when Lopez "cut off" Salva on the highway, Salva does not allege that Lopez used his vehicle to perpetrate the alleged assault. To the contrary, Salva alleges that both men exited their respective vehicles and that Lopez struck Salva in the head with a metal pole. It is beyond cavil, therefore, that the alleged assault was not an "accident" "resulting from the ownership, maintenance or use of a covered 'auto.'"

City Waste presents fails to present even a scintilla of evidence to suggest that the *Salva* Action involves anything but an intentional assault unrelated to Lopez's use of an automobile. To the contrary,

City Waste merely contends that National Casualty's arguments are "premature as the *Salva* action is only in the discovery stage.... Ultimately, after findings of fact in the *Salva* action are resolved, this Court will utilize those findings in determining policy coverage issues." *See* Surreply Memorandum of Law in Support of Defendant City Waste Services of New York, Inc.'s Application to Vacate a Default Judgment ("City Waste Reply") at 4. Indeed, in its moving papers, City Waste asks the Court to "stay this action to the extent of determining whether coverage is available under the Policy until the fact finder issues a decision in the *Salva* action." City Waste Mem. at 10. Although City Waste retreats from this audacious position in its reply papers, its request underscores the fact that City Waste has failed to offer even a theory as to why Lopez's alleged assault would be covered under National Casualty's policy.[7] Accordingly, City Waste has failed to "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y.1993).

Finally, the Court concludes that National Casualty would suffer substantial prejudice if the Court were to vacate the default judgment at this late date. As National Casualty points out in its opposition papers, the Ahmuty law firm has already withdrawn as counsel in the *Salva* Action. *See* National Casualty Opp. at 17–18. Vacating the Default Judgment would require National Casualty to reinstate payments for City Waste's defense in that action, and National Casualty would then be forced to seek reimbursement for such defense costs from City Waste. In light of the fact that City Waste has failed to offer a meritorious defense, the Court finds that National Casualty would be prejudiced by having to continue to fund a defense in an action in which a determination of no coverage would eventually be made. *See, e.g., Iacobellis v. A–1 Tool Rental, Inc.*, 65 A.D.3d 1015, 1015, 885 N.Y.S.2d 293, 294 (N.Y.App. Div.2d Dep't 2009) (restating well settled New York law that the filing of a declaratory judgment action is the "appropriate means" for an insurer seeking to resolve the issue of coverage and withdraw an insured's defense).

The Court has considered City Waste's additional arguments and finds them without merit. Accordingly, City Waste's motion to vacate the default judgment is hereby denied. The Clerk of the Court is directed to close item number 44 on the docket of this case.

SO ORDERED.

---

**7.** City Waste's argument that "the claims in the *Salva* complaint against City Waste sound in the nature of negligence, e.g. negligent hiring and supervision of the driver," *see* City Waste Mem. at 10, is unavailing. Claims for negligent hiring are legally unrelated to accidents resulting from the employee's use of a covered "auto."